IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY PENTON,

          Plaintiff,               No. 2:11-cv-0518 KJN P

     vs.

K. DICKINSON, et al.,             <u>ORDER AND</u>

          Defendants.        <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

         Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis, with an action filed pursuant to 42 U.S.C. § 1983. This case is proceeding on plaintiff's August 12, 2011 amended complaint against defendants Walker, Virga, Johnson, Pool, and Donahoo, as to plaintiff's claims that defendants interfered with the delivery of plaintiff's regular and legal mail for eight months while plaintiff was out to court, and for another forty days after plaintiff was returned to prison. Pending before the court is defendants' motion to dismiss these claims on multiple grounds pursuant to Rules 12(b) and 12(b)(6) of the Federal Rules of Civil Procedure. After carefully reviewing the record, the undersigned concludes that defendants' motion to dismiss should be denied in part and granted in part, and plaintiff should be granted leave to file a second amended complaint.

II.  Plaintiff's Amended Complaint

Plaintiff alleges that while he was housed at California State Prison, Sacramento ("CSP-SAC"), defendants withheld, failed to forward, and failed to deliver plaintiff's incoming regular and legal mail in violation of plaintiff's First and Fourteenth Amendment rights, and interfered with plaintiff's right to access the courts.  (Dkt. No. 16 at 13.)  Specifically, plaintiff contends that defendants withheld his incoming mail for over eight months while plaintiff was out to court, and that once he returned to the prison, it was over forty days before plaintiff's withheld legal mail was presented to plaintiff on July 29, 2008.  Plaintiff seeks declaratory relief, and compensatory and punitive damages.

III.  Motion to Dismiss - Failure to Exhaust

Defendants claim plaintiff failed to first exhaust his administrative remedies. Plaintiff filed an opposition; defendants filed a reply.

A.  Legal Standard re Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  Porter v. Nussle, 534 U.S. 516, 524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding conditions of confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective."  Id. at 524; Booth v. Churner, 532 U.S. 731, 740 n.5 (2001).  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  Booth, 532 U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative

2

1  process that could provide some sort of relief on the complaint stated, but no money." Id. at 734.

2  The fact that the administrative procedure cannot result in the particular form of relief requested

3  by the prisoner does not excuse exhaustion because some sort of relief or responsive action may

4  result from the grievance.  See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes

5  of exhaustion requirement include allowing prison to take responsive action, filtering out

6  frivolous cases, and creating administrative records).  The Supreme Court has cautioned courts

7  against reading futility or other exceptions into the PLRA exhaustion requirement.  See Booth,

8  532 U.S. at 741 n.6.

9          A prisoner need not exhaust further levels of review once he has either received

10  all the remedies that are "available" at an intermediate level of review, or has been reliably

11  informed by an administrator that no more remedies are available.  Brown v. Valoff, 422 F.3d

12  926, 934-35 (9th Cir. 2005).  Because there can be no absence of exhaustion unless some relief

13  remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief

14  remained available, whether at unexhausted levels or through awaiting the results of the relief

15  already granted as a result of that process.  Id., at 936-37.

16          As noted above, the PLRA requires proper exhaustion of administrative remedies.

17  Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  "Proper exhaustion demands compliance with an

18  agency's deadlines and other critical procedural rules because no adjudicative system can

19  function effectively without imposing some orderly structure on the course of its proceedings."

20  Id. at 90-91.  Thus, compliance with grievance procedures is required by the PLRA to properly

21  exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or

22  otherwise procedurally defective administrative grievance or appeal."  Id. at 83-84.  When the

23  rules of the prison do not dictate the requisite level of detail for proper review, a prisoner's

24  complaint "suffices if it alerts the prison to the nature of the wrong for which redress is sought."

25  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  This requirement is so because the

26  primary purpose of a prison's administrative review system is to "notify the prison of a problem

3

1    and to facilitate its resolution." Griffin, 557 F.3d at 1120.

2            The State of California provides its prisoners the right to appeal administratively

3    "any departmental decision, action, condition or policy which they can demonstrate as having an

4    adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2010).  It also provides

5    them the right to file appeals alleging misconduct by correctional officers and officials.  Id. at

6    § 3084.1(e).  In order to exhaust available administrative remedies within this system, a prisoner

7    must proceed through several levels of appeal:[1]  (1) informal resolution, (2) formal written appeal

8    on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and

9    (4) third level appeal to the Director of the California Department of Corrections and

10   Rehabilitation.  Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal.Code

11   Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies the

12   exhaustion requirement under § 1997e(a).  Id. at 1237-38; 15 Cal. Code Regs. § 3084.7(d)(3).

13           Non-exhaustion under § 1997e(a) is an affirmative defense which should be

14   brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil

15   Procedure 12(b).  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Moreover, the court

16   may look beyond the pleadings to determine whether a plaintiff exhausted his administrative

17   remedies.  Id.  at 1119-20.

18           B.  Analysis re Exhaustion

19                i.  Outgoing Mail:  Personal Correspondence

20           Defendants concede that plaintiff exhausted his allegation that defendants

21   impeded the delivery of his outgoing mail, defined as personal correspondence by plaintiff,

22   through Grievance No. 07-02453.  In this grievance, plaintiff alleged that mail room staff delayed

23   the mailing of his personal correspondence for periods of up to three weeks.  (Dkt. No. 16 at 21.)

24
     _____

25        [1]  This four step process was effective prior to January 28, 2011.  The current statute
     eliminates the informal level, retains the first, second, and third levels, and reaffirms that third
26   level review exhausts administrative remedies.  15 Cal.Code. Regs. § 3084.7(d)(3) (eff. Jan.28,
     2011).

The grievance was granted at the second level of review (dkt. no. 16 at 29), and screened out on that basis at the third level of review because no unresolved issue remained.  (Dkt. No. 29 at 27.) Plaintiff does not include a claim concerning outgoing mail in the amended complaint.

ii.  <u>Incoming Legal Mail/Access to the Courts</u>

a.  <u>Grievance No. 07-02453 - Incoming Legal Mail</u>

First, it appears plaintiff contends that Grievance No. 07-02453 also exhausts his claim that defendants withheld his incoming legal mail.  Plaintiff relies on his reference to "the sending and receiving of inmate regular and legal mail" which he alleges was contained in the September 2, 2007 grievance and "clearly expressed his concerns."  (Dkt. No. 29 at 12.) Defendants argue that the 2007 grievance was expressly limited to outgoing personal correspondence, which plaintiff reinforced in section F, where he provided his reasons for requesting a second level review.

In Grievance No. 07-02453, plaintiff described his problem as follows:

> This (602) complaint arises out of a mail issue.  Prison staff/officials are impeding my correspondence with family and friends outside of prison.  Article 4 Title 15 "mail" (general policy) provides in part that "the Department encourages correspondence between inmates and persons outside the correctional facilities."  It further states "the sending and receiving of mail by inmates will be uninhibited except as provided in this article."  My mail has not been leaving the institution/prison until 3 weeks after I've been giving it to the prison staff at my cell door to be mailed.  My close family & friends who communicate with [me] on a regular basis have informed me that my letters are "postmarked" 3 weeks from the date that it's given to the officer at my door which is recorded at the top right corner of every letter that I write. . . .Instead of encouraging family ties and correspondence, prison staff members are actually inhibiting correspondence and discouraging family ties and communication.

(Dkt. No. 16 at 21.)  Plaintiff contended that the holding of plaintiff's mail violated "federal law" without a penological reason, destroyed family ties, and broke down communication by holding

////

////

5

important materials such as birthday and anniversary cards for his wife and friends.  (Id. at 21-
22.)  In the action requested section, plaintiff stated:

> To be informed in writing why my mail is being held and by
> whom, to be free from retaliation for my staff complaint, to have
> all my mail, legal and regular, leave the prison as set forth in the
> plan of operation.

(Dkt. No. 16 at 19.)  The grievance was denied at the informal level, and plaintiff sought a formal
level review.  (Id.)  The first level appeal was partially granted.  (Dkt. No. 16 at 25.)  Plaintiff
was informed that in the event his mail was withheld, he would be given notification by form
CDCR 1819, after which plaintiff would have 15 working days to decide the disposition of the
mail withheld.  (Dkt. No. 25 at 42.)  On July 17, 2008, prior to plaintiff's receipt of the withheld
legal mail, plaintiff noted that he was dissatisfied with the first level response, and sought a
second level review because the response erroneously stated plaintiff complained his mail was
being withheld.  (Dkt. No. 16 at 20.)  Plaintiff clarified that his "complaint contends that [his]
correspondence is being impeded by prison staff.  Please respond accordingly (returned from out
to court status)."  (Id.)

On August 22, 2008, plaintiff's grievance was granted at the second level of
review, stating, in pertinent part, "[y]our request that your mail leave the institution without any
delays is granted, per SAC Operational Procedure #17, which states in part, 'All inmate mail that
does not require special handling will be processed in/out of the Mailroom within 40 business
hours.'"  (Dkt. No. 16 at 29.)

On September 1, 2008, after plaintiff was delivered the packet of withheld legal
mail on July 29, 2008, plaintiff sought a Director's Level Review of Grievance No. 07-02453,
adding his new claim that incoming legal mail was withheld by the CSP-SAC mailroom while
plaintiff was out to court.

On October 14, 2008, the Chief of the Inmate Appeals Branch ("IAB") responded
to plaintiff's third level of appeal.  (Dkt. No. 29 at 27.)  The Chief noted that plaintiff's appeal

6

1    was being screened out and returned to plaintiff because the "appeal was granted at the

2    institutional level.  There is no unresolved issue to be reviewed at the Director's Level of

3    Review."  (Id.)

4            Plaintiff's attempt to further expand the scope of his grievance at the third level of

5    his appeal does not comply with the procedures requiring him to describe his problem and action

6    requested in Sections A and B of the form.  Cal. Code Regs., tit. 15 § 3084.2(a) (2010).  "[A]n

7    inmate must first present a complaint at the first level of the administrative process.  See Cal.

8    Code Regs. tit. 15, § 3084.5."  Sapp v. Kimbrell, 623 F.3d 813, 825 (9th Cir. 2010).[2]  Because

9    plaintiff's appeal was granted at the second level, his third level appeal was screened out, and

10   plaintiff's newly-added incoming legal mail claim was not considered.  The fact that plaintiff's

11   new claim was not addressed further does not render the claim exhausted.  See Henderson v.

12   Rodriguez, 2009 WL 817750 at *3-4 (E.D. Cal. 2009).

13           Because the language in Grievance No. 07-02453 specifically identifies plaintiff's

14   concern as to his outgoing personal correspondence with family and friends, Grievance No. 07-

15   02453 cannot serve to exhaust plaintiff's claim that defendants subsequently withheld plaintiff's

16   incoming legal mail while plaintiff was out to court, or after he returned from being out to court.

17   Although plaintiff also referenced "legal mail" in his request for relief, that is, requesting that his

18   legal and regular mail leave the institution without any delays, such a request for relief is

19   insufficient to put prison authorities on notice that plaintiff was having difficulty receiving

20   incoming legal mail, particularly in light of plaintiff's specific characterization of his problem as

21   mail room staff were impeding his correspondence with family and friends, and were delaying

22   the correspondence from leaving the prison.

23   ////

24   _____

25       [2]  Section 3084.5(b) has since been amended.  See Cal. Code Regs. tit. 15, § 3084.5(b)
     (2011). It is now section 3084.7(a), effective January 28, 2011, which requires that "[a]ll appeals
26   . . . be initially submitted and screened at the first level. . . ."  Cal. Code Regs. tit. 15,
     § 3084.7(a).

1          b. The Screened-Out Grievance - Incoming Legal Mail/
              Access to the Courts
2

3          Second, plaintiff contends that he should be relieved of his requirement to exhaust

4   his claims concerning legal mail and access to the courts because his subsequent grievance was

5   improperly screened out.  Plaintiff provided copies of the screening forms, as well as a copy of

6   the initial appeal.

7          Defendants argue that plaintiff did not properly exhaust his legal mail claim

8   because he did not receive, before filing the instant action, a decision on the merits from the

9   Director's Level of Review, and he did not comply with defendant Pool's request to provide

10  related screening forms.  (Dkt. No. 27-1 at 7.)  In support of this argument, defendants submit a

11  declaration by K. Daly ("Daly"), Appeals Coordinator for the Institutional Appeals Office at

12  CSP-SAC.  (Dkt. No. 27-3.)  According to Daly, the appeals coordinator screens inmate appeals

13  for compliance with regulations, coordinating their processing, and maintaining inmate appeal

14  records.  (Id.)  When an inmate submits an appeal that does not comply with regulations

15  governing the appeal process, the appeals coordinator will screen and return the appeal, without

16  assigning a log number, with the reason for the screening and instructions on how to correct the

17  defect, if correction is possible.  (Id.)

18         Daly provided a chart of plaintiff's appeals that were accepted for review at the

19  Institutional Appeals Office.  Plaintiff's Grievance No. 07-02453 concerning mail was accepted

20  for review at the second level on July 25, 2008.  (Dkt. No. 27-3 at 2.)  No appeal regarding

21  plaintiff's legal mail or access to the courts was accepted for review between August 1, 2007, and

22  February 24, 2011.  (Id.)  Plaintiff submitted one appeal pertaining to the withholding of legal

23  mail and denial of access to the courts, dated August 5, 2008, but the appeal was screened out

24  and not provided a log number.  (Id.)  Plaintiff was provided a screening form, dated October 21,

25  2008, which advised him to attach all previous screening forms related to the appeal before the

26  appeal would be processed.  (Id.)

Finally, defendants provided a declaration by D. Foston, Chief of the Office of Appeals, formerly known as the IAB, confirming that no appeal regarding the withholding of personal and legal mail or denial of access to the courts due to mail being withheld was accepted at the third level of review on behalf of plaintiff.  (Dkt. No. 27-2 at 2.)

<u>The Screened-Out Grievance and its Processing</u>

On August 5, 2008, plaintiff submitted an inmate appeal claiming:

> On July 29, 2008, I received (via A.S.U. legal mail officer) C/O Gaddi (9) pieces of legal mail dating as far back as Nov. 9th, 2007, thru April 28th, 2008, without any explanation, justification, nor reason given, as to why my legal mail had been withheld for over (8) months. . . as a direct product of the withholding of said legal mail, my habeas petition has been (terminated), and I defaulted on my opportunity for (oral argument) in my civil appeal resulting from my inability to comply with the notifications and orders contained therein, the above-mentioned legal mail. . .  NOTE:  this grievance presents new issues which is [sic] separate, and distinct from the (grievance) in Log No. 07-02453.

(Dkt. No. 16 at 34.)  Plaintiff sought an advance for the cost of attorney's fees to re-litigate the cases impeded by the withheld mail, as well as compensatory and punitive damages.  (<u>Id.</u>)  On August 18, 2008, plaintiff received an informal level response, which stated:

> The reason you received the legal mail dating back to 2007 is because the mailroom was holding it while you were out to court (federal).  Once you returned you requested all your mail.  For the reasons stated above and the reasons your mail was held, your appeal is denied.

(Dkt. No. 16 at 34.)

On September 2, 2008, plaintiff noted the response was returned to plaintiff 15 days after the August 18, 2008 response date, and argued that the response was inadequate and sought a formal level review.  (<u>Id.</u>)

On September 15, 2008, I. O'Brian, CCII, Appeals Coordinator, CSP-SAC, screened out plaintiff's August 5 appeal, marking box 9, which stated:  "you must re-attach all previous Screening Forms (CDC 695's) relative to this appeal before the appeal can be processed any further."  In addition, "dated 8/6/08" was handwritten beside this reason.  (Dkt. No. 29 at 29.)

On September 21, 2008, plaintiff re-submitted his appeal, with a handwritten note that explained that plaintiff had no other attachments relative to this appeal except that which was already attached.  (Dkt. No. 29 at 30.)  Plaintiff stated that the informal level response was returned on September 2, 2008, 15 days following the August 18, 2008 response date.  (Id.) Plaintiff informed the appeals coordinator that there was nothing attached indicating why the return date was 15 days late.  (Id.)  Plaintiff indicated he sent a duplicate appeal in the event the first appeal was not received, but only the instant appeal was returned.  (Id.)  Plaintiff asked that the appeals coordinator reply through inmate legal mail for return verification purposes.  (Id.)

On October 6, 2008, K. Pool, CCII, Appeals Coordinator, CSP-SAC, screened out plaintiff's appeal, handwrote "2nd" above the title of the form, and again marked box 9, writing "Dated 8/6/08" beside the reason the appeal was screened out.  (Dkt. No. 29 at 31.)

Plaintiff re-submitted the appeal with a handwritten, one page reply.  (Dkt. No. 29 at 32.)  Plaintiff again explained that he did not receive a reply to his duplicate appeal.  (Id.) Plaintiff then stated:

> However, if there had been a reply, I'm assuming that the reply should have been accompanied with an attached screening form indicating that appellant previously submitted a duplicate appeal on the same issue and that the first appeal is currently under review at the informal level, subsequently nullifying the 2nd (duplicated - 602) making any screening form attached thereto redundantly void.
>
> As asserted on the opposite side of this page in my previous correspondence dated Sept. 21st, 2008, appellant has not received a reply resulting from the (2nd duplicate 602) which I'm gathering would be where any other attached screening forms might be located.  Therefore, I respectfully request that this office either address the issues lodged within this (602) or reject the (602). . . .

(Dkt. No. 29 at 32.)

Both plaintiff and defendants provided the screening form from IAB, dated October 21, 2008.  (Dkt. No. 16 at 43; Dkt. No. 31 at 11.)  Handwritten above the form's title is written, "3rd and Final."  (Id.)  Defendant Pool again marked box 9, adding the handwritten "DATED 8/6/08" beside the printed entry.  (Dkt. No. 16 at 43.)  However, in the comments

1  section, defendant Pool also wrote:  "Do not return this appeal.  If you do, it will be placed in

2  your Appeals file and not be processed."  (Id.)

3          Analysis

4          The PLRA requires that an inmate exhaust only those administrative remedies "as

5  are available."  42 U.S.C. § 1997e(a).  The Ninth Circuit has concluded that the PLRA does not

6  require exhaustion when circumstances render administrative remedies "effectively unavailable."

7  Sapp, 623 F.3d at 822 (citing Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010)).  In Sapp,

8  the Ninth Circuit held that "improper screening of an inmate's administrative grievances renders

9  administrative remedies 'effectively unavailable' such that exhaustion is not required under the

10  PLRA."  Id. at 823.  As the Ninth Circuit noted, if prison officials screen out an inmate's appeals

11  for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and, as a

12  result, his administrative remedies become unavailable.  Id.

13          To fall within the noted exception to exhaustion, a prisoner must show he

14  attempted to exhaust his administrative remedies but was thwarted by improper screening.  Id.

15  Specifically, the inmate must establish (1) that he actually filed a grievance or grievances that, if

16  pursued through all levels of administrative appeals, would have sufficed to exhaust the claim he

17  seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances

18  for reasons inconsistent with or unsupported by applicable regulations.  Id. at 823-24.

19          First, the screened-out grievance at issue contained factual allegations supporting

20  plaintiff's claims in federal court.  Plaintiff alleged that on July 29, 2008, he received nine pieces

21  of legal mail which were held from November 9, 2007, through April 28, 2008, which caused

22  plaintiff's habeas petition to be terminated, and caused plaintiff to default on his opportunity for

23  oral argument on a civil appeal.  (Dkt. No. 16 at 34.)  Plaintiff is not required to actually use the

24  phrase "access to the courts" -- his factual allegation as to the resulting interference with

25  plaintiff's court cases was sufficient to put prison officials on notice of plaintiff's claim.  Thus,

26  plaintiff's grievance was sufficient to put prison officials on notice of plaintiff's claims

1   concerning the withheld incoming legal mail and the resulting interference with plaintiff's access

2   to the courts, which meets the first prong of Sapp.

3              Second, the court reviews whether plaintiff's appeals were improperly screened

4   out.  In California, an appeals coordinator at the prison screens each appeal before forwarding it

5   for review on the merits.  Sapp, 623 F.3d at 818 (citing prison regulation).  The appeals

6   coordinator may reject, or screen, an appeal for various reasons, including failure to comply with

7   the fifteen-day time limit, incompleteness or omission of necessary supporting documents, or

8   failure to attempt to resolve the grievance informally.  Id.  When the appeals coordinator rejects

9   an appeal, he must complete a form that explains why the appeal is unacceptable and instruct the

10  inmate as to what the inmate must do to qualify the appeal for processing.  Id.  Once the appeals

11  coordinator allows an appeal to go forward, the inmate must pursue it through three levels of

12  formal review.  Id.

13             With their motion to dismiss, defendants provided the declaration of K. Daly,

14  noting that plaintiff was provided a screening form dated October 21, 2008, which advised

15  plaintiff he must attach all previous screening forms related to the appeal before the appeal would

16  be processed any further.  (Dkt. No. 27-3 at 2.)  This screening form, marked "3rd and final,"

17  stated plaintiff must re-attach all previous Screening Forms relative to this appeal," handwritten

18  beside this entry is:  "Dated 8/6/08."  (Dkt. No. 31-2 at 11.)  In the comments section is

19  handwritten:  "Do not return this appeal.  If you do, it will be placed in your appeals file & not be

20  processed."  (Id.)  Defendants did not provide the court with a copy of the first or second

21  screening forms.  In addition, defendants did not provide a copy of the "8/6/08" screening form.

22             On the other hand, plaintiff provided copies of the first and second screening

23  forms confirming that the instant grievance was screened out based on plaintiff's alleged failure

24  to attach a copy of the "8/6/08" screening form.  Defendants contend plaintiff did not state in

25  these responses that the "8/6/08" screening form did not exist.  However, liberally construed,

26  plaintiff's handwritten responses put the appeals coordinator on notice that plaintiff did not have

a copy of the August 6, 2008 screening form.  (Dkt. No. 29 at 30.)  For example, plaintiff wrote,

> this writer has no other attachments relative to this appeal, except
> that which is already attached.  The informal level response was
> returned to this writer on 9/2/08 (15) days following the date
> indicated 8/18/08.  However, there was nothing attached indicating
> why the return date was (15) days distant or removed from the
> actual date the (602) was received by this writer.

(Id.)  The appeals coordinator again screened out plaintiff's grievance based on his not providing the 8/6/08 screening form.  Plaintiff attached another handwritten response to the second screening form, which, liberally construed, makes clear that plaintiff is attempting to explain any alleged absence of a screening form dated August 6, 2008.  Plaintiff's speculated as to whether the required form was a reply to the duplicate appeal he sent, but he informed the appeals coordinator that he did not receive a reply to his duplicate appeal.  (Dkt. No. 29 at 32.)  But even if the missing form was a screening form as to plaintiff's duplicate appeal, plaintiff argued, a screening form attached to a duplicate appeal would be "redundantly void" because plaintiff was proceeding on the first appeal that was currently under review.  (Id.)  Moreover, in his opposition, plaintiff stated he submitted the duplicate appeal on August 18, 2008, so a screening form addressing such a duplicate appeal would have to be dated after August 18, 2008, not "8/6/08."  (Dkt. No. 29 at 9.)

Apparently, the appeals coordinator was aware of an August 6, 2008 screening form, because the appeals coordinator kept demanding that plaintiff attach it.  However, rather than explain what this "8/6/08" screening form might be, defendant Pool opted to simply mark box 9 again, but this time add conflicting language.  Defendants contend that despite defendant Pool's handwritten note advising "do not return this appeal," plaintiff "was clearly advised" that he must attach the related screening forms before the appeal could be processed any further.  (Dkt. No. 27-1 at 7.)  However, these two instructions conflict with each other.  A reasonable person could understand the form to mean plaintiff was instructed not to file the appeal again or it would simply be filed without further response, despite the printed language above.

1  Defendants have not carried their burden of demonstrating an unexcused failure to exhaust

2  administrative remedies.  Sapp, 623 F.3d at 822.

3          Defendants have not rebutted plaintiff's evidence that he informed the appeals

4  coordinator that he did not have the 8/6/08 screening form sought.  Defendants find fault with

5  plaintiff's alleged failure to take further steps to "try to obtain a copy of the screening form."

6  (Dkt. No. 30 at 3.)  However, arguably the screening form would have been held by the screening

7  coordinator; if it was insufficient for plaintiff to advise the appeals coordinator that he did not

8  have such a form, the appeals coordinator did not inform plaintiff he must separately seek a copy

9  if he did not have one, or from whom plaintiff should obtain one, and defendants do not identify

10  from whom plaintiff should have sought such a form.  In addition, the appeals coordinator did

11  not respond to plaintiff's efforts to explain why he was not appending the screening form the

12  appeals coordinator kept insisting plaintiff should attach.

13          In his opposition, plaintiff suggests it is unlikely that an August 6, 2008 screening

14  form even exists.  (Dkt. No. 29 at 13.)  The appeal at issue here is dated August 5, 2008.  (Dkt.

15  No. 16 at 34.)  At the bottom left hand corner is handwritten 8/6, which is presumably the date

16  the appeal was received, as also confirmed by the August 6, 2008 received by CSP-SAC stamp in

17  the bottom center of the form.  (Id.)  The documents provided reflect that the informal level

18  review was completed and returned on August 18, 2008, denying the appeal, not screening it out.

19  (Id.)  Defendants produce no evidence to the contrary.

20          In Sapp, the Ninth Circuit observed that:

21          In reaching this conclusion, we do not foreclose the possibility that
           exhaustion might also be excused where repeated rejections of an
22          inmate's grievances at the screening stage give rise to a reasonable
           good faith belief that administrative remedies are effectively
23          unavailable.  Such an excuse is not available here, however,
           because, despite the repeated screenings, Sapp could have no
24          reasonable belief that administrative remedies were effectively
           unavailable.  Kimbrell specifically instructed Sapp on how to seek
25          medical care, and on how to appeal any denial of care, but Sapp did
           not follow those instructions.

26

                                            14

Id., 623 F.3d at 826-27.  One of Sapp's appeals was screened out because Sapp failed to attach a Health Care Request form to show that he had sought, and was denied, medical treatment.  Id. at 825.  The court found Sapp was properly held responsible for obtaining a health care request form and submitting it with this appeal.  Id. at 826.  Here, the appeals coordinator was requiring plaintiff to provide a screening form which arguably issued from the appeals coordinator, and which was first referenced by the appeals coordinator.

Moreover, in Sapp, the reviewing official instructed Sapp on how to obtain the form: "by submitting a CDC-7362 form to the clinic."  Id.  On a subsequent screening form, the screening official noted that prison officials had personally interviewed Sapp in an attempt to clarify his appeal, and that if Sapp was seeking medical treatment, he "must submit a CDC 7362 to the Clinic."  Id.  Here, unlike the specific responses provided by reviewing officials in Sapp, on three separate occasions, the appeals coordinator opted to simply mark box 9, and repeat the "DATED 8/6/08" entry, without providing any additional information in response to plaintiff's handwritten responses to prior screening out forms.  In support of their motion, defendants did not provide a copy of the alleged August 6, 2008 screening form.  Defendants did not explain the basis for the August 6, 2008 screening form, or its relevance to plaintiff's attempt to exhaust his incoming mail and access to the courts claims.  Based upon the documentary evidence provided, the court cannot determine that an August 6, 2008 screening form even existed, or was required to enable prison officials to evaluate plaintiff's appeal.

Under these circumstances, and taking the facts in the light most favorable to the nonmoving party, the court finds that the improper rejection of plaintiff's second and third attempts to pursue the legal mail and access to courts claims with the appeals coordinator excused plaintiff from further exhaustion efforts.  Moreover, the conflicting instructions provided in the third screening form gave rise to a reasonable good faith belief that further administrative remedies were effectively unavailable to plaintiff.  Defendants' motion to dismiss plaintiff's claims as unexhausted should be denied.

IV.  Motion to Dismiss - Failure to State a Claim

       A.  Access to the Courts

          In the amended complaint, plaintiff alleges that the withholding of plaintiff's legal mail caused damages to both his criminal and civil cases.  (Dkt. No. 16 at 7-8.)  Plaintiff alleges that he was left to suffer the termination of his legal issues.  (Id. at 8.)  Plaintiff contends that the withholding and failure to forward plaintiff's legal mail, as required under prison regulations, deprived plaintiff his First and Fourteenth Amendment rights to access to the court.  (Id. at 13.)  In an exhibit, plaintiff noted that the withholding of plaintiff's legal mail resulted in the termination of plaintiff's habeas petition and the default of his right to oral argument in his civil case.  (Id. at 20.)

          In his opposition to the instant motion, plaintiff contends his case is "almost identical" to Simkins v. Bruce, 406 F.3d 1239 (10th Cir. 2005).  In reversing the district court's grant of summary judgment, in Simkins the court found that the prison's intentional withholding of an inmate's legal mail, contrary to the prison's regulations, resulted in the inmate's failure to respond to a motion for summary judgment in a federal civil rights case, which in turn led to dismissal of that case, and the inmate's loss of the opportunity to appeal from that dismissal.  Id. at 1243.  The court found that the mail room supervisor's intentional holding of the inmate's mail for over a year, in violation of prison regulations, was intentional conduct violating the inmate's right of access to the courts.  Id.  The court also denied the request for qualified immunity, finding that "the principle that unimpeded transmission of inmate legal mail is the most obvious and formal manifestation of the right of access to the courts . . . [and] has been clearly established for some time now."  Id. (internal citations and quotations omitted).

          Plaintiff contends he was transferred without notice on November 8, 2007, and therefore did not have an opportunity to notify the courts that he would be transferred, and was not allowed to take his legal materials with him while he was out to court.  (Dkt. No. 29 at 17.)  Plaintiff alleges that prison officials assured plaintiff that all of his mail would follow him as the

1    regulations required.  (Id.)  Plaintiff argues that defendant Johnson was put on notice of the

2    problem plaintiff was having with his mail by virtue of Johnson's December 21, 2007 first level

3    appeal response to plaintiff's Grievance No. 07-02453.  (Id.)  Defendant Johnson's appeal

4    response stated that a "thorough inquiry has been conducted regarding the claim presented" and

5    was evaluated.  (Dkt. No. 16 at 24.)  Defendant Johnson confirmed that prison regulations dictate

6    that the mailroom "process outgoing and incoming within a reasonable time frame."  (Id.)

7    Plaintiff argues that the granting of plaintiff appeal No. 07-02453 assured plaintiff that in the

8    event his mail was held, plaintiff would be notified.  (Dkt. No. 29 at 17.)

9            Plaintiff further contends that the holding of the district court's order denying

10   plaintiff's habeas petition in 3:06-cv-0233 WQH PCL (S.D. Cal.), deprived plaintiff of the

11   opportunity to seek reconsideration or file a request for a certificate of appealability, and the

12   holding of the notice regarding oral argument in plaintiff's civil case, F051784, Fifth Appellate

13   District, California, deprived plaintiff of his right to participate in oral argument.  (Dkt. No. 29 at

14   18.)

15           In opposition, defendants counter that Simkins is not a Ninth Circuit case, and that

16   plaintiff relies on an incorrect legal standard.  Defendants argue that plaintiff must demonstrate

17   he suffered an actual injury under Lewis v. Casey, 518 U.S. 343, 346 (1996).  Defendants

18   contend that plaintiff fails to demonstrate he suffered an actual injury as a result of his inability to

19   participate in oral argument.  Defendants further argue that plaintiff was not deprived of his

20   ability to seek reconsideration of the district court's order denying habeas relief; plaintiff could

21   have filed a motion for relief from judgment under Rule 60(b) of the Federal Rules of Civil

22   Procedure, which allows one year from the entry of judgment to seek relief.  Defendants contend

23   plaintiff apparently chose not to do so.  (Dkt. No. 30 at 7.)

24           Prisoners have a constitutionally protected right of meaningful access to the

25   courts.  Bounds v.  Smith, 430 U.S. 817, 820-21 (1977).  A prisoner claiming that his right of

26   access to the courts has been violated must show that:  1) plaintiff's access was so limited as to

be unreasonable, and 2) the inadequate access caused actual injury.  Vandelft v. Moses, 31 F.3d

794, 797 (9th Cir. 1994).  A prisoner cannot make conclusory declarations of injury, but instead

must demonstrate that a non-frivolous legal claim has been frustrated or impeded.  To prevail,

however, it is not enough for an inmate to show some sort of denial.  An "actual injury" is

"actual prejudice with respect to contemplated or existing litigation, such as the inability to meet

a filing deadline or to present a claim."  Lewis v. Casey, 518 U.S. at 348.  However, the right is

limited to direct criminal appeals, habeas petitions, and civil rights actions.  Id. at 354.

"Impairment of any other litigating capacity is simply one of the incidental (and perfectly

constitutional) consequences of conviction and incarceration."  Id. at 355.  Claims for denial of

access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to

be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now

be tried (backward-looking claim).  Christopher v. Harbury, 536 U.S. 403, 412-15 (2002).  For

example,

> The official acts claimed to have denied access may allegedly have
> caused the loss or inadequate settlement of a meritorious case, e.g.,
> Foster v. Lake Jackson, 28 F.3d 425, 429 (C.A.5 1994); Bell v.
> Milwaukee, 746 F.2d 1205, 1261 (C.A.7 1984) ("[T]he cover-up
> and resistance of the investigating police officers rendered hollow
> [the plaintiff's] right to seek redress"), the loss of an opportunity to
> sue, e.g., Swekel v. River Rouge, 119 F.3d 1259, 1261 (C.A.6
> 1997) (police coverup extended throughout "time to file suit . . .
> under . . . statute of limitations"), or the loss of an opportunity to
> seek some particular order of relief, as Harbury alleges here.

Christopher, at 414.  "Our cases rest on the recognition that the right is ancillary to the underlying

claim, without which a plaintiff cannot have suffered injury by being shut out of court.  Id. at

415.

When a prisoner asserts that he was denied access to the courts and seeks a

remedy for a lost opportunity to present a legal claim, he must show:  (1) the loss of a

non-frivolous or arguable underlying claim; (2) the official acts that frustrated the litigation; and

(3) a remedy that may be awarded as recompense, but that is not otherwise available in a future

1   suit.  Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007)[3] (citing Christopher, 536 U.S. at 413-

2   414), overruled on other grounds Hust v. Phillips, 129 S. Ct. 1036 (2009)[4].  In addition, plaintiff

3   must establish causation by linking the injury complained of to the actions or omissions of the

4   named defendants.  Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009)[5] (citing Casey v. Lewis,

5   518 U.S. at 351).

### i. State Court Action

7            Plaintiff claims he missed an opportunity for oral argument in the civil appeal of

8   his state court case, F051784, pending in the Court of Appeals for the Fifth Appellate District.

9   (Dkt. No. 29 at 18.)  However, as argued by defendants, plaintiff fails to demonstrate how this

10   deprivation resulted in an actual injury.  Plaintiff provided no information as to the nature of this

11   civil action, so it is unclear whether it is a civil rights action subject to a claim under Lewis v.

12   Casey.  But even if it was a civil rights action, plaintiff does not state how he was injured, if he

13   was, by his inability to participate in oral argument.  Plaintiff does not identify the type of motion

14   or subject matter on which oral argument was to be held.  Therefore, plaintiff fails to state a

15

----

16          [3] In Phillips, 477 F.3d 1070, the court found that the prison librarian prevented Phillips
from timely filing his petition for certiorari in the United State Supreme Court by refusing to
17   allow him to use the prison's binding machine, although Phillips had been allowed to use it in the
past.  After the plaintiff finally obtained access to the binding machine, he filed his petition,
18   which the Supreme Court rejected as untimely.  The Ninth Circuit held that the prison librarian's
actions constituted actual injury that had caused "actual prejudice with respect to contemplated or
19   existing litigation."  Id. 477 F.3d at 1076.  The court found that Phillips did not have to prove
that he would have been successful on the merits to prove actual injury.  Thus, in Hust, there was
20   a clear cause-and-effect between the defendant's actions and the loss of opportunity -- had the
prison librarian not prevented the plaintiff from using the binding machine, Phillips would have
21   filed his petition on time and the Supreme Court would not have rejected it as untimely.

22          [4] In Hust, the Supreme Court remanded the case to the Ninth Circuit Court of Appeals
for further consideration in light of Pearson v. Callahan, 555 U.S. 223, 236 (2009), a Supreme
23   Court case allowing lower courts to exercise discretion in applying the two prongs of the
qualified immunity analysis.  Id.
24
          [5] On remand, the Ninth Circuit found that in light of the Supreme Court's flexible rules
25   for pro se filings which do not require comb-binding, the librarian's view that comb-binding was
not required was reasonable and therefore the librarian was entitled to qualified immunity.  Id.,
26   588 F.3d at 658.

1  cognizable access to the court claim on the withholding of legal mail related to his state court

2  action, based on his failure to demonstrate he suffered an actual injury.

3                              ii.  Habeas Petition

4            Plaintiff claims that one of the pieces of legal mail withheld from plaintiff was his

5  copy of the December 26, 2007 district court order adopting the report and recommendations and

6  denying the habeas petition.  (Dkt. No. 29 at 18.)

7            On August 31, 2007, the United States District Court for the Southern District of

8  California issued a report and recommendation recommending that plaintiff's habeas petition be

9  denied.  Penton v. Kernan, 3:06-cv-0233 WQH PCL (dkt. no. 36).  On October 22, 2007,

10  plaintiff was granted until November 7, 2007, in which to file objections.  (Id., dkt. no. 41.)  On

11  December 20, 2007, the report and recommendation was adopted, and the petition was denied.

12  (Id., Dkt. No. 45.)  Judgment was entered on December 26, 2007 (dkt. no. 46), and no further

13  filing is noted on the docket.  The district court order does not address the issue of a certificate of

14  appealability.  (Id. at 45.)

15            On November 8, 2007, plaintiff was transferred out to court.  Plaintiff was

16  delivered the withheld legal mail on July 29, 2008.  (Dkt. No. 16 at 11.)  As argued by

17  defendants, plaintiff had until December 26, 2008, in which to file a motion for relief from

18  judgment under Rule 60(b) of the Federal Rules of Civil Procedure.  Review of the court docket

19  in 3:06-cv-0233 WQH PCL reflects plaintiff filed nothing after he received the withheld legal

20  mail on July 29, 2008.  Moreover, unlike the prisoner in Simkins, who had not yet had an

21  opportunity to file an opposition to the motion for summary judgment, plaintiff's habeas case

22  was fully briefed prior to the withholding of plaintiff's legal mail.  Thus, plaintiff was able to file

23  his habeas petition and traverse, such that the district court was fully briefed on plaintiff's habeas

24  claims.

25            Finally, plaintiff claims he was denied the ability to seek a certificate of

26  appealability.  It appears plaintiff was deprived of the right to appeal the denial of the habeas

petition or to seek a certificate of appealability, as the time for filing both expired while plaintiff

was out to court and his legal mail was withheld from him.  However, as discussed below, review

of the denial of plaintiff's habeas claims reflects that a certificate of appealability would not have

been granted.

### iii.  Habeas Report and Recommendations

In the August 31, 2007 report and recommendations, the district court addressed

multiple habeas claims in a 39 page ruling.  (3:06-cv-0233 WQH PCL, dkt. no. 36.)  Plaintiff's

claim that he was denied his right to confrontation at a post-conviction new trial motion hearing

was denied because the confrontation clause right is a trial right, and even if plaintiff had the

confrontation right on a motion for new trial, the trial court found the witness was untrustworthy,

and the failure to cross-examine the witness did not prejudice plaintiff.  (Id. at 11-12.)  The

district court denied plaintiff's claim that his due process rights were violated by the late

disclosure of portions of the police report of his co-perpetrator Jones' arrest.  (Id. at 12.)

Ultimately, the district court found that the appellate court "reasonably inferred that the untimely

disclosed information was not exculpatory evidence because [plaintiff's] statement would not

have refuted other inculpating evidence presented at trial."  (Id. at 14.)

The district court denied plaintiff's claim that the application of California's

Three Strikes Law, enacted after plaintiff's prior conviction used as a strike, violated the Ex Post

Facto Clause.  (Id.)  The court found that the "stiffened penalty" for plaintiff's latest crime was

"an aggravated offense due to its repetitive nature rather than increased punishment for his earlier

conviction[,]" and thus the Three Strikes law was not an ex post facto law as applied.  (Id. at 15-

16.)  The court also found that the Three Strikes law is not unconstitutionally vague.  (Id. at 17.)

Plaintiff also raised an insufficiency of the evidence claim.  (Id.)  Because there

was no reasoned state court opinion, the district court independently reviewed the record and

found the claim had no merit.  (Id. at 17-18.)  Two victims identified plaintiff as one of the

perpetrators at photo lineups, live lineups, and at trial, and two phone numbers linked to plaintiff

1   reflected that on the morning of the robbery, plaintiff had made 32 phone calls to and from the

2   area where the robbery occurred.  (Id. at 18.)  Plaintiff's co-perpetrator Jones' fingerprints were

3   found at the robbery scene, and plaintiff rented the car that Jones was driving at the time of his

4   arrest.  (Id.)  "Not only was there one 'solidly believed' witness who testified against [plaintiff],

5   there were additional witnesses and a plethora of other inculpating circumstantial evidence

6   presented at trial."  (Id., citation omitted.)  Thus, the district court found a rational juror could

7   find petitioner was one of the perpetrators of the robbery.  (Id.)  The district court also found that

8   the state court's rejection of  plaintiff's multiple ineffective assistance of trial and appellate

9   counsel claims was reasonable, and that plaintiff failed to demonstrate prejudice under Strickland

10   v. Washington, 466 U.S. 668, 687-88 (1984).  (Id. at 18-24.)

11           The district court evaluated plaintiff's sentencing claims under Cunningham v.

12   California, 127 S. Ct. 856, 868 (2007), and Apprendi v. New Jersey, 530 U.S. 466, 490 (2000),

13   and found that the threat of great bodily harm and a high degree of sophistication in committing

14   the crime were "overwhelmingly supported by the facts of the case," and that enhancing

15   plaintiff's sentence based on those factors did not seriously affect the "fairness, integrity, and

16   public reputations of the judicial proceedings."  (3:06-cv-0233 WQH PCL, dkt. no. 36 at 30.)

17   The district court found plaintiff's claim challenging the validity of his prior convictions barred

18   by Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394 (2001).  (3:06-cv-0233 WQH PCL,

19   dkt. no. 36 at 30-31.)

20           The district court reviewed plaintiff's multiple claims of prosecutorial conduct,

21   finding that the state court's ruling on the first claim was not contrary to, or an unreasonable

22   application of federal law, and that the remaining claims either addressed evidence that was not

23   exculpatory, or that plaintiff failed to demonstrate prejudice.  (Id. at 31-36.)

24           Finally, the district court denied plaintiff's claim that the trial court erred when it

25   excluded the first two pages of the police report for Jones' arrest, which contained plaintiff's

26   statement as to what happened prior to, and shortly after Jones' arrest, as inadmissible hearsay.

1  (Dkt. No. 36-39.)  The district court independently reviewed the record and determined that

2  because the evidence presented at trial had already put plaintiff's credibility in question, and the

3  presentation of these untrustworthy statements from Jones' arrest report to the jury would have

4  "only further damned [plaintiff's] chances at receiving a favorable impression."  (Id. at 39.)  The

5  district court found that the trial court's exclusion of plaintiff's statement was a reasonable

6  application of Supreme Court authority.  (Id.)

7           After reviewing the August 31, 2007 report and recommendations, this court finds

8  that jurists of reason would not find it debatable whether plaintiff was denied a constitutional

9  right on the basis of his habeas claims, and therefore would not recommend a certificate of

10  appealability be issued pursuant to 28 U.S.C. § 2253.  In light of this finding, plaintiff cannot

11  demonstrate an actual injury based on the withholding of the district court's order denying

12  plaintiff's petition for habeas relief.

13                    iv.  Conclusion

14           The court agrees with Simkins that it is clearly established that unimpeded

15  transmission of inmate legal mail is "the most obvious and formal manifestation of the right of

16  access to the courts," and that prison staff in the CSP-SAC mailroom should have forwarded

17  plaintiff's legal mail while he was out to court for over eight months.  However, without

18  demonstrating actual injury, as defined through the above legal authorities, plaintiff cannot state

19  a cognizable civil rights claim based on interference with plaintiff's right of access to the courts.

20  Defendants' motion to dismiss plaintiff's access to the courts claim should be granted.  However,

21  this action proceeds on plaintiff's First and Fourteenth Amendment claims that defendants

22  interfered with or withheld plaintiff's incoming mail.

23               B.  Eleventh Amendment Immunity

24           Defendants contend that, in their official capacities, they are immune from suit

25  under the Eleventh Amendment as to plaintiff's claims for retrospective declaratory relief and

26  monetary damages.  (Dkt. No. 27-1 at 8.)  In opposition, plaintiff contends that he is currently

suffering the consequences of defendants' constitutional violations, and thus his need for a present remedial alternative still exists.  Plaintiff does not specifically identify an ongoing violation, or the consequences to which he refers.  In reply, defendants contend plaintiff makes no allegations of an ongoing violation, and thus plaintiff seeks only retrospective declaratory relief.

Suits against officials acting in their official capacity are essentially suits against the state, and therefore monetary damages sought against an official acting in his or her official capacity are barred by immunity.  Will v. Michigan Dept. Of State Police, 491 U.S. 58, 71 (1989).  The Eleventh Amendment, however, allows civil actions seeking injunctive relief against state officials, and actions seeking monetary damages from an official in a personal capacity.  Will, 491 U.S. at 71; Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir. 1999).  The Ninth Circuit has "long held that the Eleventh Amendment does not generally bar declaratory judgment actions against state officers."  National Audubon Society, Inc. v. Davis, 307 F.3d 835, 847 (9th Cir. 2002) (citations omitted).  "The only question is whether the declaratory action is seeking prospective, rather than retrospective, relief."  Id.

Here, in the amended complaint, plaintiff seeks "a declaration that the acts and omissions described herein violated plaintiff's rights under the Constitution and laws of the United States."  (Dkt. No. 16 at 14.)  Although plaintiff attempts to characterize his declaratory relief request as "ongoing" because plaintiff is allegedly still suffering the consequences of the withheld mail and interference with his access to the courts, the alleged constitutional injuries for which he seeks relief here occurred in 2007 and 2008.  Thus, the declaratory relief sought in plaintiff's amended complaint is retrospective in nature, not prospective.  Morever, plaintiff has since been moved from CSP-SAC, so there is no ongoing threat of withholding mail by defendants employed at CSP-SAC.  Therefore, plaintiff's claims for declaratory relief and monetary damages against defendants in their official capacities should be dismissed.  However, plaintiff's claims against defendants in their personal capacities remain.

1        C.  Interference with Plaintiff's Incoming Mail

2        Plaintiff also claims that his First and Fourteenth Amendment rights were violated

3   when prison staff interfered with, or withheld, his incoming mail, and failed to give him notice of

4   their interference and withholding of his mail while he was out to court, as well as upon his

5   return to CSP-SAC.  Plaintiff alleges he was not delivered his withheld legal mail until 40 or

6   more days after his return to CSP-SAC.

7        Prisoners have a "First Amendment right to send and receive mail."  Witherow v.

8   Paff, 52 F.3d 264, 265 (9th Cir. 1995).  A prison, however, may adopt regulations or practices

9   which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably

10  related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).  Prison

11  regulations relating to the regulation of incoming mail are analyzed under the reasonableness

12  standard set forth in Turner, 482 U.S. at 89-91.  Thornburgh v. Abbott, 490 U.S. 401, 413-14

13  (1989).  In determining the reasonableness of the regulation, the court must consider the

14  following factors:  (1) whether there is a "valid, rational connection between the regulation and

15  the legitimate government interest put forward to justify it," (2) "whether there are alternative

16  means of exercising the right," (3) the impact that the "accommodation of the asserted

17  constitutional right will have on guards and other inmates," and (4) "the absence of ready

18  alternatives."  Turner, 482 U.S. at 89-90.

19        In addition, prison officials have a responsibility to forward mail to inmates

20  promptly.  Bryan v. Werner, 516 F.2d 233, 238 (3d Cir. 1975).  Allegations that mail delivery

21  was delayed for an inordinate amount of time are sufficient to state a claim for violation of the

22  First Amendment.  Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996).  However, a

23  temporary delay or isolated incident of delay does not violate a prisoner's First Amendment

24  rights.  Crofton v. Roe, 170 F.3d 957, 961 (9th Cir.1999) (policy of diverting publications

25  through property room reasonably related to prison's interest in inspecting mail for contraband).

26  ////

Moreover, "withhold[ing] delivery of [inmate mail] must be accompanied by minimum procedural safeguards." Procunier v. Martinez, 416 U.S. 396, 417-18 (1974), overruled on other grounds by Thornburgh, 490 U.S. at 413-14.  Specifically, an inmate "has a Fourteenth Amendment due process liberty interest in receiving notice that his incoming mail is being withheld by prison authorities."  Frost v. Symington, 197 F.3d 348, 353-54 (9th Cir. 1999).[6]  This liberty interest is protected from "arbitrary government invasion," and any decision to censor or withhold delivery of mail must be accompanied by "minimum procedural safeguards."  Sikorski v. Whorton, 631 F. Supp. 2d 1327, 1341 (D. Nev. 2009) (quoting Procunier, 416 U.S. at 417-18.)  The "minimum procedural safeguards" are:  (1) notifying the inmate that the mail was seized; (2) allowing the inmate a reasonable opportunity to protest the decision; and (3) referring any complaints to a prison official other than the one who seized the mail.  Procunier, 416 U.S. at 418-19; Krug v. Lutz, 329 F.3d 692, 698 (9th Cir. 2003).

Plaintiff alleges a delay of over eight months in receiving his incoming mail. While a brief delay in the processing of inmate's mail without notice to the inmate is not a violation of the Fourteenth Amendment, Sorrels v. McKee, 290 F.3d 965, 972 (9th Cir. 2002); Frost, 197 F.3d at 353, the over eight month delay alleged by plaintiff is not brief.

Here, plaintiff alleges that prison officials assured him that he would be given notice if his mail was withheld.  Despite plaintiff's return from out to court status, plaintiff was allegedly not provided his legal mail for an additional 40 days after his return, and he was then provided 9 pieces of legal mail that had been withheld from November 9, 2007, to April 28, 2008, allegedly without prior notice that plaintiff's mail would be held while he was out to court.

However, there is a due process violation "[o]nly if the failure to provide notice was pursuant to prison policy;" mere negligence on the part of prison officials is not actionable as a due process violation.  Sorrels, 290 F.3d at 972.  Here, plaintiff has not addressed whether the

---

[6]  In Frost, the prisoner was challenging the alleged withholding of Penthouse and Gallery magazines, and the unauthorized return of music CDs.  Id.

1  failure to provide notice of the withholding of plaintiff's mail while plaintiff was out to court was

2  based on prison policy.  Plaintiff alleges that his incoming mail was held at CSP-SAC in

3  violation of prison regulations requiring that mail be forwarded to the institution where plaintiff

4  was transferred, citing Cal. Code Regs. tit. 15, § 3147(8),[7] and it was withheld for over eight

5  months, allegedly without notice to plaintiff.  But plaintiff does not identify any policy, written or

6  informal, governing the provision of notice in the event that incoming mail is withheld while an

7  inmate is out to court.

8         The informal appeal response confirms that plaintiff's legal mail was held while

9  plaintiff was out to court.  (Dkt. No. 16 at 34.)  This raises an inference that the holding of

10  plaintiff's mail by unidentified[8] mailroom staff was intentional, and plaintiff alleges facts

11  demonstrating that the withholding was in violation of prison regulations, violating plaintiff's

12  First Amendment rights.  However, the informal appeal response, standing alone, is insufficient

13  to demonstrate an institutional policy requiring such withholding.

14         Therefore, the court finds that plaintiff has stated a cognizable claim under the

15  First Amendment, and may be able to state a claim under the Fourteenth Amendment, provided

16  plaintiff can allege facts demonstrating that the failure to provide notice was "caused by conduct

17  pursuant to established state procedure, rather than random and unauthorized action."  Sorrels,

18  290 F.3d at 972.  Plaintiff should be granted leave to amend to reallege his First Amendment

19  allegations, and to replead his Fourteenth Amendment claim, provided he can allege facts

20  demonstrating such a violation.

21  _____

22      [7] Subsection (8) reads:  "Forwarding Mail.  Mail received for an inmate who has been
    transferred from the facility where the mail is received will be immediately forwarded to the

23  facility, administrative office or agency to whom the inmate's custody has been relinquished,
    except as otherwise stated in this section."  Id.  Section (8)(A) addresses temporary absences:

24  "Mail will be held for an inmate who is temporarily away from the facility when the inmate's
    return is anticipated within one week."  Id.  Here, plaintiff states he was away over eight months.

25      [8] As noted in the court's screening order, plaintiff named two Doe defendants as plaintiff
    was unaware of the names of the mail room staff who held plaintiff's incoming mail while he

26  was out to court.

1        Finally, because plaintiff fails to attribute the contested actions to a named

2   defendant, he has failed to state a claim as to any particular defendant in this case.[9]

3        The Civil Rights Act under which this action was filed provides as follows:

4       Every person who, under color of [state law] . . . subjects, or causes
    to be subjected, any citizen of the United States . . . to the

5       deprivation of any rights, privileges, or immunities secured by the
    Constitution . . . shall be liable to the party injured in an action at

6       law, suit in equity, or other proper proceeding for redress.

7   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

8   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

9   Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend

10  § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976)

11  (no affirmative link between the incidents of police misconduct and the adoption of any plan or

12  policy demonstrating their authorization or approval of such misconduct).  "A person 'subjects'

13  another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an

14  affirmative act, participates in another's affirmative acts or omits to perform an act which he is

15  legally required to do that causes the deprivation of which complaint is made."  Johnson v.

16  Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

17       Moreover, supervisory personnel are generally not liable under § 1983 for the

18  actions of their employees under a theory of respondeat superior and, therefore, when a named

19  defendant holds a supervisorial position, the causal link between him and the claimed

20  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

21  (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v.

22  Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979) (no liability where

23  there is no evidence of personal participation).  Vague and conclusory allegations concerning the

24

25      [9]  Plaintiff appears to contend that defendant Johnson was put on notice of plaintiff's difficulty in receiving mail by virtue of defendant Johnson's role in addressing plaintiff's

26  Grievance No. 07-02453.  However, as set forth above, this appeal only contested the processing of plaintiff's outgoing personal correspondence to family and friends, not incoming mail.

involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

As defendants argue in their motion to dismiss, plaintiff does not allege the individual involvement of defendants Walker, Virga, Johnson, Pool or Donahoo in connection with the interference with or withholding of plaintiff's mail while he was out to court.  As noted above, plaintiff's Grievance No. 07-02453 concerned plaintiff's outgoing personal correspondence, which did not put the named defendants on notice of the alleged improper withholding of plaintiff's incoming mail while he was out to court.  Plaintiff's second, un-numbered grievance was screened out at the second level of review.  Although defendant Pool screened out the grievance, by the time she addressed the grievance, the deprivation had already occurred.  No further investigation on her part would have resolved the alleged improper handling of plaintiff's incoming mail because he had returned to CSP-SAC by October of 2008.  Moreover, plaintiff now claims that the informal grievance response stating that plaintiff's mail was held while he was out to court indicates that there was an institutional policy of withholding mail while inmates are away from CSP-SAC to attend court, and that supervisory staff trained mailroom staff to do so.  (Dkt. No. 29 at 21.)  However, these allegations are not supported by factual allegations in plaintiff's amended complaint, and plaintiff raises no facts demonstrating that the named defendants played any role in training mail room staff or prison staff responsible for handling incoming mail.  Thus, defendants' motion to dismiss should be granted, but plaintiff should be granted leave to file an amended complaint to name the proper defendants, and to reallege his First Amendment claim against the named defendants in the event he can plead an actual connection or link to the withholding of plaintiff's incoming mail or to a policy of holding

////

////

////

1  an inmate's mail while the inmate is out to court, and to replead his Fourteenth Amendment

2  claim, should he be able to allege facts demonstrating such a violation.[10]

3          As noted above, plaintiff named Doe defendants as he is unaware of the names of

4  mail room staff who withheld plaintiff's mail while he was out to court.  However, plaintiff

5  provided a copy of the legal mail log setting forth the listing for the 9 pieces of legal mail

6  withheld while plaintiff was out to court.  (Dkt. No. 16 at 32.)  This July 29, 2008 mail log is

7  signed by R. Gaddi and Supervisor L.A. Quinn.  (Id.)  The August 18, 2008 informal appeal

8  response confirming that plaintiff's mail was held while he was out to court appears to be signed

9  by an individual named "J" or "S" Nunez.  (Dkt. No. 16 at 34.)  In the interests of judicial

10  economy and good cause appearing therefor, counsel for defendants shall take all steps necessary

11  to confirm whether R. Gaddi, L.A. Quinn, or Nunez were responsible for the withholding of

12  plaintiff's incoming mail from November 8, 2007, to July 28, 2009, at CSP-SAC.  If these

13  individuals were not responsible, counsel for defendants shall take all steps necessary to identify

14  the mail room staff person or persons responsible for such mail withholding.  Within forty-five

15  days from the date of these findings and recommendations, counsel for defendants shall notify

16  the court by declaration as to the identity of these potential defendants and whether counsel for

17  the named defendants is authorized to accept service on behalf of the identified potential

18  defendant or defendants.

19  V.  Conclusion

20          In accordance with the above, IT IS HEREBY ORDERED that

21          1.  The Clerk of the Court is directed to assign a district judge to this case; and

22          2.  Within forty-five days from the date of these findings and recommendations,

23  counsel for defendants shall notify the court by declaration as to the identity of the potential

24  _____

25     [10]  In light of the recommended dismissal of plaintiff's access to the courts claims,
   plaintiff should not include his access to the courts claims in any second amended complaint, and
26  plaintiff need not address the issue of exhaustion of administrative remedies.

1  defendants, as set forth above, and whether counsel for the named defendants is authorized to

2  accept service on behalf of the identified potential defendant or defendants; and

3          IT IS RECOMMENDED that defendants' February 27, 2012 motion to dismiss

4  (dkt. no. 27) be denied in part, and granted in part, as follows:

5          1.  Denied as to plaintiff's alleged failure to exhaust administrative remedies;

6          2.  Granted as to plaintiff's access to the courts claim;

7          3.  Granted as to plaintiff's claims for declaratory relief and monetary damages

8  against defendants in their official capacities;

9          4.  Although plaintiff stated a cognizable claim under the First Amendment based

10  on the withholding of plaintiff's incoming mail for over eight months, defendants' motion to

11  dismiss is granted based on plaintiff's failure to attribute these actions to a named defendant, and

12  thus failure to state a claim as to any particular defendant in this case;

13          5.  Plaintiff's amended complaint be dismissed with leave to amend as set forth

14  above; and

15          6.  Within sixty days from the date of the district court's order adopting these

16  recommendations, plaintiff shall file a second amended complaint that complies with the instant

17  findings and recommendations, the requirements of the Civil Rights Act, the Federal Rules of

18  Civil Procedure, and the Local Rules of Practice.  The second amended complaint must also bear

19  the docket number assigned to this case and must be labeled "Second Amended Complaint."

20  Failure to file a second amended complaint in accordance with this order may result in the

21  dismissal of this action.

22          These findings and recommendations are submitted to the United States District

23  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

24  one days after being served with these findings and recommendations, any party may file written

25  objections with the court and serve a copy on all parties.  Such a document should be captioned

26  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

1    objections shall be filed and served within fourteen days after service of the objections.  The

2    parties are advised that failure to file objections within the specified time may waive the right to

3    appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4    DATED:  July 5, 2012

5

6                                                    _____

7                                                    KENDALL J. NEWMAN
                                                     UNITED STATES MAGISTRATE JUDGE

8    pent0518.mtd

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26