1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ANTHONY PENTON,                          No. 2:11-cv-0518 TLN KJN P

12                    Plaintiff,

13          v.                                 ORDER AND FINDINGS AND
                                               RECOMMENDATIONS
14    L. JOHNSON, et al.,

15                    Defendants.

16

17          Plaintiff is a state prisoner, proceeding through counsel with a civil rights action.

18   Defendants' motions for judgment on the pleadings[1] was noticed for hearing on November 21,

19   2019, before the undersigned. Because oral argument was not of material assistance, the hearing

20   was vacated, and the matter submitted on the briefs. E.D. Cal. L.R. 230(g). Upon review of the

21   documents in support and opposition, and good cause appearing therefor, the undersigned finds

22   and recommends that defendants' motions be granted in part and denied in part.

23   I. Plaintiff's Fourth Amended Complaint

24          In his first cause of action, plaintiff alleges that defendants Bradford, Morrow, Johnson,

25   Walker, Virga, Donahoo, Nunez, Gaddi, Quinn, Pool and Does 1-11 violated plaintiff's right to

26   ─────────────────────
     [1] Defendant Nunez has not appeared in this action. Defendant Johnson filed a motion for
27   judgment on the pleadings on October 24, 2019. The remaining defendants filed a motion for
     judgment on the pleadings on October 16, 2019. Unless a particular defendant is specifically
28   addressed herein, the court's reference to "defendants" refers to all moving defendants.

                                                  1

access the courts in violation of the First and Fourteenth Amendments.  (ECF No. 104 at 20-21.)

Plaintiff alleges, *inter alia*, that defendant Pool prevented plaintiff from using the inmate appeal

system to proceed with his denial of access to the courts claims arising from the conduct of the

remaining defendants.  (ECF No. 104 at 24.)  "As a result, [plaintiff] was not able to challenge his

unconstitutionally increased sentence in light of the Ninth Circuit's opinion in Butler v. Curry,"

"constitut[ing] active interference with [plaintiff's] right of access to the courts, and resulted in a

loss of a substantial, nonfrivolous claim."  (Id.)

In his second cause of action, plaintiff alleges that defendants Johnson, Walker, Virga,

Donahoo, Nunez, Gaddi, Quinn and Does 1-11, wrongfully withheld plaintiff's mail without

notice and with no legitimate penological reasons, from November 8, 2007, through July 29,

2008.  (ECF No. 104 at 25.)

In plaintiff's third cause of action, he alleges that defendant Pool prevented plaintiff from

filing inmate grievances regarding the withholding of plaintiff's mail from November 8, 2007,

through July 29, 2008, violating plaintiff's First and Fourteenth Amendment rights.  (ECF No.

104 at 28.)

Plaintiff alleges in his fourth cause of action that "retaliation defendants" (Pool, Lynch,

Salas, Besenaiz and Does 12-13) violated plaintiff's First and Fourteenth Amendment rights to

file prison grievances without retaliation.  (ECF No. 104 at 29.)  Specifically, plaintiff alleges that

defendant Pool prevented plaintiff from filing inmate grievances regarding the withholding of his

mail, and "[d]uring this time," "Pool also continuously screened out [plaintiff's] attempts to

pursue an inmate appeal related to the wrongful return of his 2008 annual package by" Salas.

(ECF No. 104 at ¶¶ 57, 72-74, 99, 111, 113).  Plaintiff alleges that the pattern of retaliation

continued during this time period when defendant Besenaiz issued plaintiff an unfounded

infraction for plaintiff purportedly refusing to allow his cellmate to have the lower bunk bed in

their cell, even though plaintiff required the lower bunk due to health reasons.  (ECF No. 104 at

16 ¶ 70, 29.)  Plaintiff alleges that "[a]lso during this time," defendant Lynch told plaintiff that

"you have nothing coming to you, referring to withholding [plaintiff's] rights," "and also told

[plaintiff] that he should do all that he can to transfer to another prison."  (ECF No. 104 at 16 ¶

1   69, 29.)

2   II.  Request for Judicial Notice

3       Defendants ask the court to take judicial notice of the court docket and rulings in

4   plaintiff's habeas case filed in the United States District Court for the Southern District of

5   California, Case No. 3:06-00233 WQH RBM.  (ECF  Nos. 167-2, 169-2, referring to ECF Nos.

6   167-2 at 5-118; 169-2 at 5-131.)

7       Generally, on Rule 12(b)(6) and Rule 12(c) motions, courts do not consider materials

8   beyond the pleadings, or else risk converting the motion to one for summary judgment.  See, e.g.,

9   Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), reversed on other grounds by Galbraith v.

10  County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).  Under Rule 201(b)(2) of the Federal Rules

11  of Evidence, however, a court considering a Rule 12(b)(6) or (c) motion may take judicial notice

12  of facts "not subject to reasonable dispute," including matters of public record.  Mack v. South

13  Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).  "When considering a motion

14  for judgment on the pleadings, this court may consider facts that 'are contained in materials of

15  which the court may take judicial notice.'"  Heliotrope General, Inc. v. Ford Motor Co., 189 F.3d

16  971, 981 n.18 (9th Cir. 1999) (citation omitted).

17      Thus, a court "may take judicial notice of proceedings in other courts both within and

18  without the federal judicial system, if those proceedings have a direct relation to matters at issue."

19  Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007) (citation omitted).  Rule 201(b)(2)

20  permits a court considering a Heck issue to take judicial notice of relevant court records.  Harley

21  v. County of Los Angeles, 2011 WL 13214283, at *3, *7-*9 (C.D. Cal. June 13, 2011) (taking

22  judicial notice of state court criminal records in connection with argument that plaintiff's claims

23  related to his alleged unlawful arrest were barred by the Heck doctrine); see also Bailey v. Elders,

24  2012 WL 993292, at *3 (S.D. Cal. March 22, 2012) (taking judicial notice of state court criminal

25  records in connection with motion to dismiss plaintiff's civil rights claims alleging false arrest

26  and excessive force were barred by Heck).

27      Here, because plaintiff's habeas action filed in the Southern District are directly relevant

28  to the issues herein, defendants' requests for judicial notice are granted.

3

III. <u>Legal Standards:  Motion for Judgment on the Pleadings</u>

Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings may be granted when, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law.  <u>Chavez v United States</u>, 683 F.3d 1102, 1108 (9th Cir. 2012).  The applicable standard is essentially identical to the standard for a motion to dismiss under Rule 12(b)(6).  <u>United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). Thus, although the Court must accept well-pleaded facts as true, it is not required to accept mere conclusory allegations or conclusions of law.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-679 (2009).

In ruling on a motion for judgment on the pleadings, a court may consider evidence beyond the pleadings when (1) it takes judicial notice under Federal Rule of Evidence 201, or (2) material is incorporated by reference to the complaint.  <u>Khoja v. Orexigen Therapeutics, Inc.</u>, 899 F.3d 988, 998 (9th Cir. 2018).  The Court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" attached to the complaint.  <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

A motion for judgment on the pleadings should be granted "when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." <u>Fleming v. Pickard</u>, 581 F.3d 922, 925 (9th Cir. 2009).

IV. <u>The Civil Rights Act</u>

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  <u>Rizzo v. Goode</u>,

423 U.S. 362, 371 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980). "Congress did not intend § 1983 liability to attach where . . . causation [is] absent." See Monell v. Department of Social Servs., 436 U.S. 658 (1978). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

V.  Discussion

A.  Claims re Access to the Courts and Right to Legal Mail

Moving defendants seek judgment on the pleadings based on the Southern District's recent denial of plaintiff's 2006 petition for writ of habeas corpus, after considering plaintiff's objections that should have been submitted in 2007.  Defendants also argue that the favorable termination rule should bar plaintiff's access to court and right to legal mail claims.  But defendants are mistaken.  In the instant case, the Court of Appeals for the Ninth Circuit found that plaintiff's access to the courts claim, which has a causal nexus with his right to legal mail claim, is "not an assessment of the merits of the underlying claim that is now lost." (ECF No. 95 at 6.)  Rather, "an inmate must merely show that he 'could not *present a claim* to the courts because of the state's failure to fulfill its constitutional obligations.'" (ECF No. 95 at 6), quoting Allen v. Sakai, 48 F.3d 1082 (9th Cir. 1994) (emphasis added).  Indeed, in a footnote, the Circuit noted that plaintiff's "constitutional injury was complete when his ability to challenge the magistrate judge's report and recommendation was impaired." (ECF No. 95 at 6 n.1.)  Such findings are law of the case,[2] which bar this court from granting defendants' motion on the grounds that the habeas

---

[2]  Under the doctrine of the law of the case, "a court will not reexamine an issue previously decided by the same or higher court in the same case." Lucas Auto Eng'g, Inc. v. Bridgestone/Firestone, Inc., 275 F.3d 762, 766 (9th Cir. 2001).  The court may exercise its discretion to depart from the law of the case only if one of these five circumstances is present:  (1) the first decision was clearly erroneous; (2) there has been an intervening change of law; (3) the evidence is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result.  United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997).  It is an abuse of discretion for a court to depart from the law of the case without one of these five requisite conditions.  Thomas v. Bible, 983 F.2d 152, 155 (9th Cir. 1993).

petition was subsequently denied. Thus, whether or not plaintiff's habeas petition was subsequently denied some twelve years later does not constitute new evidence or changed circumstances warranting departure from law of the case.

Similarly, the undersigned finds such claims are not barred under Heck v. Humphrey, 512 U.S. 477 (1994). In this action, plaintiff is not challenging his conviction, and his claim for damages will not necessarily imply the invalidity of his underlying conviction or sentence because any judgment in this action would establish only that his habeas action was not legally frivolous. See Lewis v. Casey, 518 U.S. 343, 353 n.3 & 354-55 (1996) (right of access to the courts is limited to non-frivolous criminal appeals, habeas corpus actions, and § 1983 suits). The undersigned is persuaded that plaintiff's access to the courts claim is analogous to the claim raised in Sprinkle v. Robinson, 2017 WL 1079833 (E.D. Cal. Mar. 22, 2017), adopted 2017 WL 2812973 (E.D. Cal. June 29, 2017), rejecting Burd v. Sessler, 702 F.3d 429 (7th Cir. 2012) (where prisoner sought law library access to withdraw his guilty plea, he cannot demonstrate actual injury without demonstrating that there is merit to his claim that he should have been allowed to withdraw his plea, thus his claim was barred under Heck). Also, the Circuit's prior ruling in the instant case distinguishes this case from the undersigned's prior finding in Delarm v. Growe, 2016 WL 1722382 at *2-3 (E.D. Cal. April 29, 2016), adopted 2:15-cv-2258 KJM KJN (June 10, 2016), which relied on the reasoning of Burd.

Here, the undersigned adopts Judge Brennan's careful reasoning in finding that Heck does not bar plaintiff's access to the courts claim, but simply prevents plaintiff from seeking damages for wrongful incarceration if his conviction or sentence is not invalidated. Sprinkle, 2017 WL 1079833, at *5-10 ("Importantly, this approach honors Heck by disallowing the portion of the case that implicates the fact or duration of confinement while also honoring Lewis's holding that the 'actual injury' component of an access-to-courts claim does *not* require the plaintiff to show that she would have won the underlying case."). As acknowledged by plaintiff, he does not seek damages for wrongful incarceration, but rather seeks a declaratory judgment, compensatory, emotional, punitive, and nominal damages, costs and fees, and any other relief the court deems just and proper (ECF No. 104 at 30) for the alleged violation of plaintiff's access to the courts.

1    Such decision is further supported by the Ninth Circuit's finding that plaintiff may seek

2    compensatory damages based on his claim that withholding his mail hindered his ability to access

3    the courts to pursue his habeas petition, and may seek compensatory damages "not clearly

4    duplicable through another type of action." (ECF No. 95 at 7-8.)  While the prisoner in Sprinkle

5    did not attempt to revive his habeas action, as pointed out by defendants, neither did the Circuit

6    find in Sprinkle that Sprinkle's access to the courts claim was "not an assessment of the merits of

7    the underlying claim." (ECF No. 95 at 6.)

8          Finally, defendants' argument that plaintiff does not meet the elements of an access to the

9    courts claim, and thus he has no standing to pursue such claim, fails because the Ninth Circuit

10   already found that petitioner "has standing to bring his access [to the courts] claim." (ECF No. 95

11   at 6.)  Such finding is further supported by the Supreme Court's holding in Spokeo v. Robins, 136

12   S. Ct. 1540, 1549 (2016).  In Spokeo, the high court "reiterated that intangible, difficult-to-

13   quantify harms may still be sufficiently concrete to create standing."  Canales-Robles v. Peters,

14   270 F. Supp. 3d 1230, 1237 (D. Ore. Sept. 3, 2017), citing Spokeo, 136 S. Ct. at 1549; see also,

15   Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998) (holding that "[t]he deprivation of First

16   Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he

17   can show, or any mental or emotional injury he may have incurred.")  In Canales-Robles, the

18   court also adopted the reasoning of Sprinkle, holding that Heck was not an absolute bar to the

19   action, and Heck did not bar recovery of nominal damages or absolutely bar compensatory and

20   punitive damages.  Canales-Robles, 270 F. Supp. 3d at 1239-40.

21         Here, petitioner alleges he suffered a prolonged delay in his access to the court, as well as

22   to his legal mail, fairly traceable to the defendants, and constitutional violations such as this can

23   be redressed by an award of compensatory or nominal damages.  See, e.g., Johnson v. Young,

24   2017 WL 662904 (D. Nevada Feb. 17, 2017) (jury awarded nominal damages of $1.00 based on a

25   finding that defendant retaliated against Johnson in violation of the First Amendment); Jones v.

26   McDaniel, 717 F.3d 1062 (9th Cir. 2013) (jury awarded $2.00 in nominal damages).

27         For all of the above reasons, the undersigned recommends that defendants' motions be

28   denied as to plaintiff's access to the courts and right to legal mail claims.

7

B. Alleged Failure to State A Cognizable Claim - Defendant Pool

Defendants allege that plaintiff fails to state a cognizable claim against defendant Pool based on allegations in plaintiff's first and third causes of action. Plaintiff argues that defendants mischaracterize the nature of plaintiff's allegations against Pool.

### 1. Fourth Amended Complaint

In the first cause of action, plaintiff alleges that defendant Pool prevented plaintiff from using the appeal system to pursue plaintiff's denial of access to the courts claims, and as a result, plaintiff was unable to challenge his sentence in the Southern District. (ECF No. 104 at 24.) Plaintiff alleges Pool's actions interfered with plaintiff's right of access to the courts in violation of the First and Fourteenth Amendments. (Id.)

In the third cause of action, plaintiff alleges Pool's actions prevented plaintiff from filing grievances regarding the withholding of plaintiff's mail from November 8, 2007, through July 29, 2008, in violation of the First and Fourteenth Amendments. (ECF No. 104 at 28.)

### 2. Governing Standards

The Due Process Clause protects plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). However, it is well-established that "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.") "The defendants' disregard for these procedures, or their mishandling of his grievance documents, creates no actionable § 1983 claim." Moody v. Martinez, 42 F.3d 1401 (1994). The Ninth Circuit noted that "[t]he Supreme Court has declared that 'a State creates a protected liberty interest by placing substantive limitations on official discretion[,]'" but found "that Moody's claims . . . contain no actionable allegation of such substantive limits or protected rights." Id., at n.3. "Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process prison grievances." Daniels v. Aguillera, 2018 WL 1763311 (E.D. Cal. Apr. 12, 2018).

Moreover, a prison official's denial of a grievance does not itself violate the constitution. See Evans v. Skolnik, 637 F. App'x 285, 288 (9th Cir. 2015), cert. dism'd, 136 S. Ct. 2390 (2016) (unpublished opinion). "An allegation that a prison official inappropriately denied or failed to adequately respond to a grievance, without more, does not state a claim under § 1983." Evans, 637 F. App'x at 288, citing see Ramirez, 334 F.3d at 860 ("Ramirez's claimed loss of a liberty interest in the processing of his appeals does not satisfy this standard, because inmates lack a separate constitutional entitlement to a specific prison grievance procedure."). "Screening-out, cancelling, rejecting or denying an inmate appeal 'does not result in the denial of the minimal civilized measure of life's necessities, even if the justification for the screen-out [, cancellation, rejection or denial] is illegitimate.'" Millare v. Stratton, 2017 WL 9604609 (S.D. Cal. Feb. 28, 2017) (quoting Saenz v. Spearman, 2009 WL 2365405, at *6 (E.D. Cal. July 29, 2009)). See also e.g., Alford v. Gyaami, 2015 WL 3488301, at *10 n.2 (E.D. Cal. June 2, 2015) ("Even if prison officials delay, deny, or erroneously screen out a prisoner's inmate grievance, they have not deprived him of a federal constitutional right."); Wright v. Shannon, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (allegations that prison officials denied or ignored inmate appeals failed to state a cognizable claim under the First Amendment); Towner v. Knowles, 2009 WL 4281999 at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff's allegations that prison officials screened out his inmate appeals without any basis failed to indicate a deprivation of federal rights); Williams v. Cate, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims."). See also George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) (holding that only persons who cause or participate in civil rights violations can be held responsible and that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation"); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (prisoner's pleading "failed to state a claim because no constitutional right was violated by the defendants' failure, if any, to process all of the grievances he submitted for consideration."), quoting Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D. Ill. 1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the

////

inmates.  Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.")

However, prisoners do retain a First Amendment right to petition the government through the prison grievance process.  See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001); see also Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015), citing Hasan v. U.S. Dep't of Labor, 400 F.3d 1001, 1005 (7th Cir. 2005) ("Prisoners' grievances, unless frivolous, concerning the conditions in which they are being confined are deemed petitions for redress of grievances and thus are protected by the First Amendment.").  Prisoners also "have a constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 821 (1977).  Such "right extends to prison grievance procedures." Carr v. Stelzer, 733 F. App'x 361, 362 (9th Cir. May 2, 2018) (citations omitted).  Where a prisoner is required to exhaust the administrative grievance process, "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system." Bradley, 64 F.3d at 1279.  Accordingly, interference with the grievance process may, in certain circumstances, implicate the First Amendment.

In addition, where the prison grievance puts reviewing officials on notice of a violation, such facts may give rise to an obligation to intervene or further investigate.  Evans, 63 F. App'x at 288 (although the denial of the "grievance was not itself a constitutional violation, the grievance may have put the supervisory officials on notice that officers were violating the Fourth Amendment," and may be found "liable for their failure to intervene."); Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006) (prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates).  More recently, in an unpublished opinion, the Ninth Circuit determined that a prison official's refusal to process a grievance that failed to conform to the official's "personal conception of acceptable content" constituted "content-based discrimination that runs contrary to First Amendment protections." Richey v. Dahne, 733 F. App'x 881, 883-84 (9th Cir. 2018).

////

////

### 3. Discussion

Here, the amended pleading fails to demonstrate a causal connection between defendant Pool's actions as appeals coordinator and plaintiff's access to the courts allegation raised in his first cause of action. Defendant Pool, as appeals coordinator at CSP-SAC, could not have interfered with plaintiff's ability to pursue habeas relief in the Southern District of California because prisoners are not required to exhaust administrative remedies in connection with habeas claims. Rather, the exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). The exhaustion of administrative remedies is only required to pursue relief under 42 U.S.C. § § 1983, et seq., and other claims based on the conditions of confinement in state prison. Thus, whether or not defendant Pool improperly screened out plaintiff's administrative grievance or improperly warned plaintiff as to the resubmission of his screened-out appeal, Pool's actions or omissions had no bearing on whether or not plaintiff could file a pleading in his habeas action filed in the Southern District.

Plaintiff argues that the undersigned previously determined that Pool's actions effectively blocked plaintiff's ability to file his inmate grievance pertaining to his withheld mail. (ECF No. 171 at 20.) However, plaintiff refers to this court's evaluation of whether or not plaintiff had exhausted his administrative remedies in order to pursue his claim concerning the withholding of his legal mail in this action. (ECF No. 33 at 11-15.) The undersigned found, and the district court adopted, that plaintiff should be excused from further exhaustion efforts in light of the alleged improper rejection of plaintiff's second and third attempts to pursue the legal mail and access to courts claims. (ECF No. 33 at 15; 40.) Such findings in plaintiff's favor meant that plaintiff could pursue such claims in this action. Therefore, such alleged improper screening did not impede plaintiff's access to the courts as to the withholding of plaintiff's legal mail because such claims are proceeding in this action. In other words, plaintiff cannot demonstrate an actual injury based on Pool's alleged improper screening because this court excused plaintiff's failure to exhaust and allowed such claims to continue in this action.

Moreover, by the time defendant Pool screened out plaintiff's administrative claims on October 6 and 21, 2008 (ECF No. 29 at 31, 32), the alleged constitutional violations had already

taken place. The Southern District of California had adopted the August 31, 2007 findings and recommendations, judgment was entered on December 26, 2007, plaintiff's time to appeal had run, and plaintiff's legal mail had already been withheld at CSP-SAC. Therefore, "[n]o further investigation on [Pool's] part would have resolved the alleged improper handling of plaintiff's incoming mail because [plaintiff] had returned to CSP-SAC by October of 2008." (ECF No. 33 at 29.) Indeed, by the time Pool screened out plaintiff's appeal the second time, plaintiff's legal mail had been returned to him.

Plaintiff argues that by instructing plaintiff not to return the appeal, and if he did, it would be placed in the appeals file and not processed (ECF No. 29 at 33), defendant Pool prevented plaintiff from "exercising his right to file a prison grievance" in violation of plaintiff's First Amendment rights. (ECF No. 171 at 21.) But plaintiff's disagreement with how defendant Pool screened out the grievance, without more, fails to state a cognizable access to the courts claim based on the improper withholding of plaintiff's legal mail, because plaintiff is pursuing such claims in this action. Certainly, the alleged improper screening excused plaintiff from the exhaustion requirement, allowing plaintiff to pursue his underlying claims in this action. But contrary to plaintiff's statement that Pool "instructed [plaintiff] not to file inmate appeals in the future," (ECF No. 171 at 32), defendant Pool's response did not inform plaintiff that he could not file any appeals in the future. Rather, defendant Pool's response was limited to the appeal plaintiff had re-submitted on two prior occasions based on Pool's failure to append prior screening forms. (ECF No. 29 at 33.) Defendant Pool's response did not prevent plaintiff from filing a grievance concerning other issues. In any event, plaintiff's deadlines in the Southern District had run, and plaintiff's mail had been withheld, by the time defendant Pool screened out plaintiff's grievances, and plaintiff is pursuing his underlying civil rights claims based on such alleged violations in this action.

The undersigned understands that plaintiff is not raising a due process claim against Pool,[3] and appreciates plaintiff's nuanced argument that defendant Pool's actions in screening out the

---

[3] However, the court notes that plaintiff included the Fourteenth Amendment in all of his claims for relief. (ECF No. 104 at 20, 25, 28, & 29.)

12

appeal challenging the withholding of plaintiff's legal mail violated plaintiff's First Amendment right to file prison grievances. But plaintiff presents no persuasive authority for the proposition that a prison appeals coordinator violates a prisoner's First Amendment right to file prison grievances simply by screening out a grievance based on the prisoner's failure to append prior screening documents, whether or not the screening was allegedly improper.

For all of the above reasons, the undersigned finds that defendant Pool's motion for judgment on the pleadings as to plaintiff's first and third causes of action should be granted. In light of such findings, the undersigned need not address defendant Pool's request for qualified immunity on the first and third causes of action.

C. Plaintiff's Retaliation Claims: Defendants Pool & Lynch

Defendants Appeals Coordinator Pool and Correctional Officer Lynch move for judgment on the pleadings on plaintiff's retaliation claims on the basis that plaintiff failed to allege facts meeting all of the elements of a retaliation claim, and argue that both defendants are entitled to qualified immunity.

1. Standards Governing Retaliation Claims

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citation omitted), citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). A claim of retaliation for filing a prison grievance "raises constitutional questions beyond the due process deprivation of liberty." See Austin v. Terhune, 367 F.3d 1167, 1170 (9th Cir. 2004), citing Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see also Watison, 668 F.3d at 1114-15. Conduct protected by the First Amendment includes communications that are "part of the grievance process." Brodheim, 584 F.3d at 1271 n.4. To assert a retaliation claim, a prisoner must specifically identify the protected

13

conduct at issue, name the defendant who took adverse action against him, and plead that the allegedly adverse action[4] was taken "because of" such protected conduct.[5]

The Ninth Circuit has found that preserving institutional order, discipline and security are legitimate penological goals which, if they provide the motivation for an official act taken, will defeat a claim of retaliation. Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to restrictions of first amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners."). Thus, the burden is on plaintiff to allege and demonstrate that legitimate correctional purposes did not motivate the actions by prison officials about which he complains. See Pratt, 65 F.3d at 808 ("[Plaintiff] must show that there were no legitimate correctional purposes motivating the actions he complains of.").

### 2. Qualified Immunity

The doctrine of qualified immunity protects government officials from civil liability under § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Stanton v. Sims, 571 U.S. 3, *5-6 (2013) (per curiam) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). To determine whether an officer is entitled to qualified immunity, two prongs are evaluated: (1) whether the alleged facts demonstrate the violation of a constitutional right, and (2) whether such right was "clearly established" at the time of the "alleged misconduct." Pearson, 555 U.S. at 232 (citation omitted). Either prong may be considered first. Id. at 236. Because the issue in this case turns on whether

////

---

[4] For purposes of evaluating a retaliation claim, an adverse action is action that "could chill a person of ordinary firmness from continuing to engage in the protected activity[ ]." Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006). See also White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).

[5] Prisoners have a constitutional right to file prison grievances and pursue civil rights litigation in the courts. See Rhodes v. Robinson, 408 F.3d at 567. Prison officials may not retaliate against prisoners for exercising these rights. Id. at 568; see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997); Bradley, 64 F.2d at 1279.

the right at issue was "clearly established" in 2008, the period of defendants' alleged misconduct, the undersigned addresses the second prong of Pearson.

Clearly Established Law

The Supreme Court has assumed without deciding that the law as determined by a Circuit court may constitute clearly established law. See, e.g., Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018) ("[E]ven if a controlling circuit precedent could constitute clearly established law in these circumstances, it does not do so here.") (quoting City & Cty. of San Francisco v. Sheehan, 135 S. Ct. 1165, 1176 (2015) ); Elder v. Holloway, 510 U.S. 510, 516 (1994); see also Carrillo v. County of Los Angeles, 798 F.3d 1210, 1221 & n.13 (9th Cir. 2015) (noting that in Hope v. Pelzer, 536 U.S. 730, 741-45 (2002), the Court looked to "binding circuit precedent" to determine clearly established law and has not yet "overruled Hope or called its exclusive reliance on circuit precedent into question").

The Ninth Circuit makes clear it "first look[s] to binding precedent to determine whether a law was clearly established." Ioane v. Hodges, 903 F.3d 929, 937 (9th Cir. 2018) (citing Chappell v. Mandeville, 706 F.3d 1052, 1056 (9th Cir. 2013) ); see Carrillo, 798 F.3d at 1221 ("clearly established law" includes "controlling authority in [the defendants'] jurisdiction" (alteration in original) (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999) ). If no binding precedent "is on point, [the Ninth Circuit] may consider other decisional law." Chappell, 706 F.3d at 1056. Ultimately, "the prior precedent must be 'controlling' -- from the Ninth Circuit or Supreme Court -- or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." Sharp v. Cty. of Orange, 871 F.3d 901, 911 (9th Cir. 2017) (citing Wilson, 526 U.S. at 617). That said, the Ninth Circuit has approved of the use of unpublished and district court decisions to inform qualified immunity analysis in conjunction with controlling authority. Sorrels v. McKee, 290 F.3d 965, 971 (9th Cir. 2002) ("We have held that unpublished decisions of district courts may inform our qualified immunity analysis.").

i. Level of Specificity

Clearly established law must be defined with a "high 'degree of specificity,'" District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018) (quoting Mullenix v. Luna, 136 S. Ct. 305, 309 (2015) (per curiam) ), and this standard is "demanding," id. at 589. The "legal principle [at issue] must have a sufficiently clear foundation in then-existing precedent." Id. It "must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority," rather than merely "suggested by then-existing precedent." Id. at 589-90 (citations and internal quotation marks omitted).

While "a case directly on point" is not required "for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate," Kisela, 138 S. Ct. at 1152 (quoting White v. Pauly, 137 S. Ct. 548, 551 (2017) ), and must

"'squarely govern[ ]' the specific facts at issue." Id. at 1153 (citing Mullenix, 136 S. Ct. at 309); see also Pike v. Hester, 891 F.3d 1131, 1141 (9th Cir. 2018) ("An exact factual match is not required . . . ."). "The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Wesby, 138 S. Ct. at 590 (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). Thus, "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" Ziglar v. Abbasi, 137 S. Ct. 1843, 1866 (2017) (quoting Mullenix, 136 S. Ct. at 308) (emphasis and alteration in original).

"This requirement -- that an official loses qualified immunity only for violating clearly established law -- protects officials accused of violating 'extremely abstract rights.'" Ziglar, 137 S. Ct. at 1866 (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987) ). In one oft-quoted summation of these principles, the Court has said qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law." Wesby, 138 S. Ct. at 589 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986) ).

ii.  Notice/Fair Warning

Specificity is required to provide officials with notice of what conduct runs afoul of the law. "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." Kisela, 138 S. Ct. at 1152 (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam) ); see also Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) ("'[T]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'") (quoting Hope, 536 U.S. at 741) (alterations in original).

Although "'general statements of the law are not inherently incapable of giving fair and clear warning to officers,' . . . . constitutional guidelines [that] seem inapplicable or too remote" will not suffice. Kisela, 138 S. Ct. at 1153 (quoting White, 137 S. Ct. at 552). Put another way, "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' " [Kisela, 138 S. Ct. at 1153] (quoting Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014) ). Accordingly, "a court must ask whether it would have been clear to a reasonable officer that the alleged conduct 'was unlawful in the situation he confronted.'" Ziglar, 137 S. Ct. at 1867 (quoting Saucier, 533 U.S. at 202).

Rico v. Beard, 2019 WL 1036075, at **2-4 (E.D. Cal. Mar. 5, 2019) (evaluating qualified immunity in the context of an inmate's claim that he was forced to live in an environment with excessive noise in violation of the Eighth Amendment).

////

16

1                                   a. <u>Defendant Pool</u>

2 <u>The Parties' Positions</u>

3         Defendant Pool argues that he is entitled to qualified immunity because "inmates lack a

4 separate constitutional entitlement to a specific prison grievance procedure," and the law as to the

5 processing of grievances was not beyond debate.  (ECF No. 167-1 at 19), quoting <u>Ramirez</u>, 334

6 F.3d at 860.  Defendant Pool also contends that "[a] defendant's mishandling of prison grievances

7 or disregard of grievance procedures is not actionable."  (ECF No. 167-1 at 19), <u>citing</u> <u>see</u> <u>Moody</u>

8 <u>v. Martinez</u>, 42 F.3d 1401 (9th Cir. 1994) (unpublished).  Plaintiff counters that the law prior to

9 2008 clearly established that retaliatory actions taken against an inmate in response to the

10 inmate's exercise of his First Amendment rights were unconstitutional.  (ECF No. 171 at 31.)

11 In reply, defendant Pool argues that <u>Brodheim</u> was not decided by the Ninth Circuit until 2009,

12 and points out that the district court analyzed <u>Brodheim</u> under <u>Rhodes v. Robinson</u>, yet granted

13 summary judgment in favor of defendants, "illustrating that the case law was not beyond debate."

14 (ECF No. 174 at 7.)

15 <u>Discussion</u>

16         Plaintiff contends that defendant Pool is not entitled to qualified immunity because it was

17 clearly established in 2005 that prisoners have a First Amendment right to file prison grievances

18 pursuant to <u>Rhodes v. Robinson</u>., 408 F.3d at 567.  (ECF No. 17-1 at 34.)  But plaintiff cites no

19 cases demonstrating that a reasonable prison official would have understood that screening out a

20 prisoner's grievance would violate plaintiff's right against retaliation, and this court is unaware of

21 any.  Plaintiff's reliance on <u>Rhodes</u> characterizes the "clearly established right" too generally, in

22 violation of Supreme Court authority.  <u>See</u> <u>Kisela</u>, 138 S. Ct. at 1152.

23         Although the instant case does not involve a content-based challenge as addressed in

24 <u>Richey</u>, [6] the Ninth Circuit also addressed a retaliation claim raised against Dahne, the prison

---

25 [6]  In addressing the content-based challenge, the Ninth Circuit reaffirmed that <u>Brodheim</u> held
26 squarely that "rules prohibiting disrespectful language do not serve a legitimate penological
interest in the special context of prison grievances," and clarified that when a correctional officer
27 refuses to allow a grievance to proceed through the administrative process based upon personal
objections to the grievance's content, it was content-based discrimination that runs contrary to
28 First Amendment protections.  <u>Richey</u>, 733 F. App'x at 883.

official charged with handling grievances. <u>Richey v. Dahne</u>, 733 F. App'x 881, 883-84 (9th Cir. 2018). The Ninth Circuit granted Dahne qualified immunity, finding that "[n]either our prior case law nor that of the Supreme Court has clearly established that merely refusing to accept a grievance for processing is a retaliatory adverse action." <u>Richey</u>, 733 F. App'x at 884. Specifically, the Circuit found that because of "the lack of case law addressing the issue of whether not processing a grievance could be viewed as retaliation, it is not the case that 'every reasonable official would have understood' that refusing a grievance violates a prisoner's right against retaliation." <u>Id.</u> (citation omitted).

The undersigned finds that screening out a grievance is analogous to not processing a grievance, but in any event is part of processing grievances, and plaintiff alleges no other adverse or punitive action taken by defendant Pool. <u>See</u> <u>Brodheim</u>, 584 F.3d at 1270-71;[7] <u>Richey</u>, 733 F. App'x at 884. Rather, plaintiff claims that defendant Pool retaliated against plaintiff by improperly screening out plaintiff's grievances, and that the continuous screening out of plaintiff's grievances constitutes retaliation. But due to the fact that the adverse action alleged here is the screening out of the grievances, defendant Pool is entitled to qualified immunity because it is not clear that in 2008 every reasonable prison official would have understood that screening out a grievance, even on multiple occasions, without more, would violate a prisoner's right against retaliation. <u>See</u> <u>Richey</u>, 733 F. App'x at 884. Therefore, defendant Pool is entitled to qualified immunity.

---

[7] In <u>Brodheim</u>, a prison guard denied a prisoner's interview request and warned the prisoner "to be careful what you write, req[u]est on this form." <u>Id.</u> at 1265-66. The Ninth Circuit found that the prisoner did not need to establish that the prison guard's statement contained an explicit threat of discipline or transfer, because "[b]y its very nature, a statement that 'warns' a person to stop doing something carries the implication of some consequence of a failure to heed that warning." <u>Id.</u> at 1270. Finding that "[t]he power of a threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat," the Ninth Circuit reversed the district court's finding that the prisoner had produced inadequate evidence of an adverse action. <u>Id.</u> at 1271. Here, in defendant Pool's second screening, defendant Pool advised plaintiff "do not return this appeal. If you do, it will be placed in your Appeal file & not be processed." (ECF No. 104 at ¶ 72.) Even assuming, *arguendo*, Pool's statements could be construed to be a "threat" sufficient to constitute an adverse action, <u>Brodheim</u> was not decided until 2009, and therefore does not preclude qualified immunity for Pool's actions in 2008.

1                 **b.  <u>Defendant Lynch</u>**

2    <u>Did Defendant Lynch Fail to State a Claim?</u>

3        <u>Allegations re Lynch</u>

4        In his fourth amended complaint, plaintiff alleges the following as to defendant Lynch:

5        Correctional Officer Lynch acted under color of state law.  (ECF No. 104, ¶ 14.)  After

6    plaintiff returned from out to court on June 19, 2018, he was placed in administrative segregation

7    at CSP-SAC and "began to endure a series of retaliatory acts from Defendants K. Pool, Lynch, G.

8    Salas, Besenaiz, and Does 12-13 (collectively, the "Retaliation Defendants") because of his

9    attempts to use the prison grievance system to address the withholding of his mail.  The

10   Retaliation Defendants' conduct ranged from contaminating [plaintiff's] food with blood and

11   fecal matter [allegedly by Doe Defendants 12 & 13] to outright preventing [plaintiff] from

12   pursuing inmate appeals relating to the withholding of his mail.  (ECF No. 104, ¶ 57.)

13       Specifically, as to defendant Lynch, plaintiff alleges that "[d]uring this time," defendant

14   Lynch told plaintiff "'you have nothing coming to you,' referring to withholding of plaintiff's

15   rights while at CSP-SAC, and also told [plaintiff] that he should do all that he can to transfer to

16   another prison."  (ECF No. 104, ¶ 69.)

17       In his fourth cause of action, plaintiff alleges a series of retaliatory acts were committed

18   against plaintiff because of his attempts to exercise his First Amendment right to file and pursue

19   inmate grievances to address the withholding of his mail, and claims such

20                   acts included, but were not limited to, (1) preventing Mr. Penton
                     from filing inmate grievances regarding the withholding of his legal

21                   and personal mail from November 8, 2007 through July 29, 2008, (2)
                     wrongfully returning Mr. Penton's 2008 annual care package, (3)

22                   telling Mr. Penton that he had no rights while he was incarcerated at
                     CSP-SAC, (4) issuing Mr. Penton an unfounded infraction relating

23                   to his requirement for a lower bunk bed due to health problems; (5)
                     contaminating Mr. Penton's food with blood, and (6) contaminating

24                   Mr. Penton's food with fecal matter.

25   (ECF No. 104 at 29.)  It is unclear whether "telling" plaintiff "he had no rights" is attributed to

26   defendant Lynch or whether the allegation is counsel's view of defendant Lynch telling plaintiff

27   "you have nothing coming to you."

28   *////*

Finally, plaintiff alleges that these alleged actions chilled plaintiff's exercise of his First Amendment right and did not advance any legitimate penological purpose. And, as a result, plaintiff has suffered a violation of his constitutional rights. Id.

Discussion

The Ninth Circuit has held that the filing of an inmate grievance constitutes protected conduct. Watison, 668 F.3d at 1114; Rhodes, 408 F.3d at 568. In the fourth amended complaint, plaintiff alleged that he filed numerous grievances, and therefore has sufficiently alleged that he engaged in protected conduct. Plaintiff also sufficiently alleges that his First Amendment activity was "chilled" by the conduct of defendant Lynch, a correctional officer at CSP-SAC. (ECF No. 104 at ¶ 75.) Plaintiff alleges that defendant Lynch told plaintiff "you have nothing coming to you," referring to withholding plaintiff's rights while at CSP-SAC, and told plaintiff that he should do all that he can to transfer to another prison (ECF No. 104 at ¶ 69), and therefore Lynch's conduct did not reasonably advance a legitimate penological purpose. The Ninth Circuit has found this element satisfied at the pleading stage when a plaintiff successfully pleads the conduct at issue is retaliatory, arguably because retaliatory conduct meant to inhibit First Amendment expression can never be a legitimate penological goal. See Watison, 668 F.3d at 1115-17.

Defendants argue that plaintiff's retaliation claims against defendant Lynch should be dismissed because the alleged verbal harassment does not rise to the level of an adverse action and plaintiff's allegations were insufficient to show that plaintiff's protected activity was the motivating factor behind defendant Lynch's actions. As to whether plaintiff sufficiently alleged that he suffered an adverse action, an adverse action in the retaliation context "need not be an independent constitutional violation." Watison, 668 F.3d at 1114 (citing Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995)). Rather, as the Ninth Circuit recognized in Brodheim, "the mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." Id., 584 F.3d at 1270; see also Hoffman v. Jones, 2018 WL 3436830, at *6 (E.D. Cal. July 17, 2018) ("[A] threat is sufficient adverse action."); Ramnanan v. Abukalam, 2018 WL 339050, at *3 (E.D. Cal. Jan. 8, 2018) (prisoner's claim that the defendant

told prisoner he would "be in trouble" if he went through with submitting his grievance is sufficient to state a claim for retaliation."). In <u>Brodheim</u>, a prison guard denied a prisoner's request for an interview and warned the prisoner "to be careful what you write, req[u]est on this form." <u>Id.</u> at 1265-66. The Ninth Circuit found that the prisoner did not need to establish that the prison guard's statement contained an explicit threat of discipline or transfer, because "[b]y its very nature, a statement that 'warns' a person to stop doing something carries the implication of some consequence of a failure to heed that warning." <u>Id.</u> at 1270. Finding that "[t]he power of a threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat," the Ninth Circuit reversed the district court's finding that the prisoner had produced inadequate evidence of an adverse action. <u>Id.</u> at 1271.

Here, plaintiff alleges that defendant Lynch directed his verbal threats, "you have nothing coming to you," and telling plaintiff to transfer to another prison, at plaintiff in response to plaintiff's attempts to file his inmate grievances regarding the withheld mail. (ECF No. 104 at ¶ 69.) Plaintiff pleads that such threats by Lynch chilled plaintiff from attempting to use the prison appeals system to address the wrongful withholding of his mail. (ECF No. 104 at ¶ 75.) At this stage of the proceedings, where the court must take allegations to be true, the undersigned finds that plaintiff's allegations plausibly state that defendant Lynch subjected plaintiff to adverse action.

The court next addresses whether plaintiff sufficiently alleged a causal connection between his protected conduct and the adverse action. "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint," the Ninth Circuit has held that allegations regarding "a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." <u>Watison</u>, 668 F.3d at 1114; <u>see also</u> <u>Pratt v. Rowland</u>, 65 F.3d 802, 808 (9th Cir. 1995) ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent."). Here, plaintiff alleges a chronology of events from which retaliation can be inferred, and plaintiff alleges that defendant Lynch made the verbal threats because plaintiff attempted to file inmate grievances. Such allegations are sufficient at the pleading stage. <u>See</u> <u>Garcia v. Strayhorn</u>, 2014 WL 4385410, at *9-10 (S.D. Cal. Sept. 4, 2014) (denying motion to dismiss a retaliation claim

because in addition to other allegations the plaintiff prisoner had "pled a chronology of events from which a reasonable trier of fact could infer that Defendants' actions against him were retaliatory").

For all of the above reasons, the undersigned concludes that defendant Lynch is not entitled to judgment on the pleadings on plaintiff's retaliation claims.[8]

Is Defendant Lynch Entitled to Qualified Immunity?

The Parties' Positions

Defendant Lynch argues that he is entitled to qualified immunity because it was not clearly established in 2008 that defendant Lynch's alleged verbal statement, "you have nothing coming to you," standing alone, was unconstitutional retaliation. Plaintiff relies on Rhodes v. Robinson, arguing that by "2008 it was clearly established that retaliatory actions taken against an inmate in response to the inmate's exercise of his First Amendment rights were unconstitutional." (ECF No. 171 at 31.) Plaintiff points out that Lynch also told plaintiff he should do all that he can to transfer to another prison. (ECF No. 104 at ¶ 69.) Plaintiff argues that a number of Eastern District of California cases demonstrate that by 2008 "this District had recognized that threatening language was 'sufficient adverse action to state a claim' of retaliation." (ECF No. 171 at 31.)

Discussion

Despite this court's finding that plaintiff alleged sufficient facts to state a cognizable retaliation claim, and acknowledging that qualified immunity is generally a question of law, not a question of fact, the undersigned finds that at this pleading stage, the context of defendant Lynch's interaction with plaintiff is insufficiently developed to ascertain whether defendant Lynch is entitled to qualified immunity. See Hydrick v. Hunter, 500 F.3d 978, 985 (9th Cir. 2007)[9] (noting the special difficulty of deciding the qualified immunity defense on a 12(b)(6)

---

[8] Of course, this does not mean that plaintiff would prevail on his retaliation claims or that the evidence would support his retaliation claims as to all five elements. Rather, the undersigned concludes that, at this juncture, the allegations are sufficient to survive judgment on the pleadings.

[9] Hydrick was subsequently vacated on other grounds by Hunter v. Hydrick, 129 S. Ct. 2431 (2009), and remanded for further consideration in light of Ashcroft v. Iqbal, 556 U.S. 662 (2009).

motion); see also Saif'ullah v. Albritton, 2017 WL 2834119, at *4 (N.D. Cal. June 30, 2017) ("A resolution of the qualified immunity defense at this stage of the proceeding raises factual questions outside the context of plaintiffs' complaints," denying motion for judgment on the pleadings without prejudice).

Defendant Lynch's reliance on Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), is not dispositive on this issue because the vulgar language was not used in the context of a retaliation claim. Rather, evaluating qualified immunity at this stage of the proceeding raises factual questions outside the allegations in the operative pleading, particularly in crafting the contours of the clearly established precedent. For example, it is unclear whether Lynch's statements "you've got nothing coming," or telling plaintiff that he should transfer to another prison were "threats" sufficient to put a reasonable officer on notice that such statements would constitute retaliation, not based on the evaluation of the words used, but rather the context in which the words were expressed, as well as their timing. Defendant Lynch may be able to show that he is entitled to qualified immunity at the summary judgment stage on evidence not yet presented. In addition, plaintiff may not be able to adduce evidence demonstrating that defendant Lynch was involved in the chronology of events plaintiff alleges raise an inference of retaliation. On the other hand, plaintiff may be able to adduce evidence that defendant Lynch was so involved. Such factual disputes preclude entry of qualified immunity at this stage of the proceedings, but defendant Lynch may reassert the defense in a motion for summary judgment.

C. Are Claims Against Defendants Quinn and Besenaiz Barred?

1. Statute of Limitations

Defendants move for judgment on the pleadings on the ground that plaintiff's claims against defendants Quinn and Besenaiz are barred by the statute of limitations. Fed. R. Civ. P. 12(c). Plaintiff does not dispute defendants' calculation of the limitations period, but rather argues that because plaintiff's first pleadings were filed pro se, and must be liberally construed, this court should "interpret" plaintiff's fourth amended complaint "to relate back to the original pleading." (ECF No. 171 at 35.) Plaintiff also argues that defendants failed to demonstrate either defendant suffered any prejudice by the amendment. (Id.)

As noted above, "[b]ecause a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, the same standard of review applies to motions brought under either rule." Gregg v. Hawaii, Dep't of Public Safety, 870 F.3d 883, 887 (9th Cir. 2017) (internal quotation marks and citations omitted). Federal law determines when a claim accrues, and "[u]nder federal law, a claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action." Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009) (citation omitted); Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004). Because section 1983 contains no specific statute of limitations, federal courts should apply the forum state's statute of limitations for personal injury actions. Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004); Maldonado, 370 F.3d at 954. California's statute of limitations for personal injury actions was extended to two years effective January 1, 2003. Cal. Civ. Proc. Code § 335.1; Jones v. Blanas, 393 F.3d at 927; Maldonado, 370 F.3d at 954-55. California law also provides that when a litigant is incarcerated for a term of less than life, the applicable limitations period is tolled for two years on grounds of "disability." Cal. Civ. Proc. Code § 352.1(a); Brooks v. Mercy Hosp., 1 Cal. App. 5th 1, 6-7 (2016) (tolling provision construed "to mean that only those sentenced to life without the possibility of parole should be excluded from the tolling provision.").

Applying the additional two years for tolling due to his imprisonment, plaintiff had four years to bring his claims against defendants Quinn and Besenaiz. Here, plaintiff's claims against defendants Quinn and Besenaiz accrued in 2007 and 2008. (ECF No. 104 at ¶¶ 36, 38, 43, 45, 57, 59, 72, 79, 98, 108.) Applying the four year tolling period, plaintiff was required to bring his claims against defendants Quinn and Besenaiz by late 2012. As argued by defendants, plaintiff did not include such claims in his original, amended, second amended, or third amended complaints. (ECF Nos. 1 (February 24, 2011), 16 (August 12, 2011), 44 (November 15, 2012), 73 (March 13, 2015).) Rather, plaintiff's claims against defendants Quinn and Besenaiz were not pled until the fourth amended complaint, filed on April 12, 2018. Because such claims were pled almost six years after the limitations period expired, such claims are barred unless the period is equitably tolled or the claims relate back to plaintiff's earlier pleadings.

////

2. Equitable Tolling

2    This court must apply California law governing equitable tolling.  Jones v. Blanas, 393

3  F.3d at 927.  "[California's] general doctrine of equitable tolling suspends the running of a statute

4  of limitations when a plaintiff, possessing several legal remedies, reasonably and in good faith

5  pursues one designed to lessen the extent of his injuries or damages."  Dimcheff v. Bay Valley

6  Pizza, Inc., 84 F. App'x 981, 983 (9th Cir. 2004).  "Under California law, tolling is appropriate in

7  a later suit when an earlier suit was filed and where the record shows:  (1) timely notice to the

8  defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to

9  defendant against the second claim; and (3) good faith and reasonable conduct by the plaintiff in

10  filing the second claim."  Azer v. Connell, 306 F.3d 930, 936 (9th Cir. 2002) (citation and internal

11  quotation marks omitted).  A plaintiff is only entitled to equitable tolling if all three prongs of the

12  test are satisfied.  Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1140 (9th Cir.

13  2001).  Plaintiff bears the burden to plead facts demonstrating he is entitled to equitable tolling.

14  Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir. 1993); see also Kleinhammer v. City of Paso

15  Robles, 385 Fed. App'x 642, 643 (9th Cir. 2010).

16    In this case, plaintiff has not demonstrated that he is entitled to equitable tolling under

17  California law.  Plaintiff does not show that he was pursuing an earlier action.  Even if the court

18  could construe plaintiff's prior pleadings as an "earlier suit," which the court would not,

19  defendants Quinn and Besenaiz were not included in such earlier pleadings and thus received no

20  timely notice of plaintiff's claims.  Plaintiff also failed to demonstrate that such defendants would

21  not be prejudiced in gathering evidence where almost ten years had passed since the alleged

22  violations occurred.  Plaintiff cites no California law demonstrating plaintiff is entitled to

23  equitable tolling under these circumstances.

24    The undersigned finds plaintiff is not entitled to equitable tolling under California law.

25    Finally, the Ninth Circuit has also held that prisoners are entitled to equitable tolling of the

26  statute of limitations while completing the mandatory administrative exhaustion process.  Brown

27  v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005).  Here, however, any tolling plaintiff would have

28  ////

accrued during such administrative process would have expired during the four-year tolling period discussed above.

### 3. Relation Back

The issue here is whether plaintiff's claims that (a) defendant Quinn's actions in allegedly withholding plaintiff's mail from 2007 to 2008 and (b) defendant Besenaiz issued an allegedly improper infraction in 2008, relate back to plaintiff's claims that other defendants allegedly withheld plaintiff's mail from 2007 to 2008 raised in plaintiff's original and amended pleadings.

Where, as here, state law provides the applicable statute of limitations, an amended complaint may relate back to the filing of the original complaint if it satisfies either state or federal law on relation back. Butler v. Nat'l Cmty. Renaissance of Cal., 766 F.3d 1191, 1200 (9th Cir. 2014). When considering whether the claims in the amended pleading relate back, district courts are required to consider both the Federal Rules of Civil Procedure, as well as applicable state law, and "employ whichever affords the 'more permissive' relation back standard." Butler, 766 F.3d at 1201 (quoting Coons v. Indus. Knife Co., 620 F.3d 38, 42 (1st Cir. 2010)).

### a. Federal Law

"Relation back" refers to a doctrine that allows an amendment of a pleading to "relate back" to the date of the original pleading, thus evading any statute of limitations that might affect the amendment. Baldwin Cty. Welcome Center v. Brown, 466 U.S. 147, 149 n.3 (1984). Federal Rule of Civil Procedure 15(c) provides that an amendment relates back when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

////

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). "An amended claim arises out of the same conduct, transaction, or occurrence if it will likely be proved by the same kind of evidence offered in support of the original pleading." ASARCO, LLC, 765 F.3d 999, 1004 (9th Cir. 2014) (citations and internal quotation marks omitted). "The relation back doctrine of rule 15(c) is liberally applied." Id. (citing Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240, 1259 n.29 (9th Cir. 1982)). To relate back, the two pleadings must share a common core of operative facts, so that defendants are adequately put on notice of the charges against them. ASARCO, LLC, 765 F.3d at 1004 (quoting Martell v. Trilogy Ltd., 872 F.2d 322, 325 (9th Cir. 1989)).

### b. California Law

"The relation-back doctrine requires that the amended complaint must (1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original one." Norgart v. Upjohn Co., 21 Cal. 4th 383, 408-09 (1999), citing Barrington v. A. H. Robins Co., 39 Cal. 3d 146, 150-51 (1985); Smeltzley v. Nicholson Manufacturing Co. , 18 Cal. 3d 932, 934-40, 136 Cal. Rptr. 269 (1977). An amended complaint relates back to an earlier complaint if it is based on the same general set of facts, even if the plaintiff alleges a different legal theory or new cause of action. Smeltzley, 18 Cal. 3d at 934, 936. However, the doctrine is unavailable where "the plaintiff seeks by amendment to recover upon a set of facts entirely unrelated to those pleaded in the original complaint." Stockwell v. McAlvay, 10 Cal. 2d 368, 375 (1937). "In determining whether the amended complaint alleges facts that are sufficiently similar to those alleged in the original complaint, the critical inquiry is whether the defendant had adequate notice of the claim based on the original pleading." Pointe San Diego Residential Cmty., L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP, 195 Cal. App. 4th 265, 276 (2011). The policy behind California's statutes of limitations and relation-back doctrine is to "put defendants on notice of the need to defend against a claim in time to prepare a fair defense on the merits." Garrison v. Bd. of Directors, 36 Cal. App. 4th 1670, 1678 (1995).

////

Nonetheless, even if an earlier complaint rests on the same set of facts, the amended complaint may not relate back unless a "reasonable defendant [would] have understood the [original] complaint to allege that it was in some way responsible for plaintiff's injury[.]" Bell v. Tri-City Hosp. Dist., 196 Cal. App. 3d 438, 449 (1987), disapproved of on other grounds by State v. Super. Ct. (Bodde), 32 Cal. 4th 1234 (2004). Thus, "[t]he relation-back doctrine is inapplicable . . . where [a plaintiff] attempts to relate back an amended [complaint] to a complaint which failed to name [defendant] or any Doe defendants." Kralow Co. v. Sully-Miller Contracting Co., 168 Cal. App. 3d 1029, 1035-36 (1985); see also Anderson v. Allstate Ins. Co., 630 F.2d 677, 683 (9th Cir. 1980) ("Under California law, if a defendant is added to an amended complaint as a new defendant, and not as a Doe defendant, the amendment does not relate back to the time of the original complaint."). "The general rule is that an amended complaint that adds a new defendant does not relate back to the date of filing the original complaint and the statute of limitations is applied as of the date the amended complaint is filed, not the date the original complaint is filed." Woo v. Sup. Ct., 75 Cal. App. 4th 169, 176 (1999); see also Butler, 766 F.3d at 1201. California courts have recognized that "where an amendment does not add a 'new' defendant, but simply corrects a misnomer by which an 'old' defendant was sued, case law recognizes an exception to the general rule of no relation back." Hawkins v. Pac. Coast Bldg. Prods., Inc., 124 Cal. App. 4th 1497, 22 Cal. Rptr. 3d 453, 457 (2004). But to come under such exception the plaintiff must have been "genuinely ignorant" of the new defendant's identity at the time the plaintiff filed the original complaint. Woo, 75 Cal. App. 4th at 176-77.

c. Application

Plaintiff cites no legal authority supporting his request that the court apply the liberal construction of pro se pleadings and the policy goals underlying the statute of limitations to interpret plaintiff's operative pleading to relate back to plaintiff's original complaint. (ECF No. 171 at 35.) Plaintiff fails to address the legal authorities discussed above.

Defendants accurately note that plaintiff's fourth amended complaint as well as an exhibit to plaintiff's amended complaint demonstrate that plaintiff was aware of the identity of both defendants Quinn and Besenaiz before the statute of limitations had run. (ECF No. 167-1 at 20.)

28

Specifically, in the fourth amended complaint, plaintiff alleged that during the time of his 2008 allegations, plaintiff was issued an allegedly unfounded infraction by Besenaiz. (ECF No. 104 at ¶ 16, 70.) Thus, plaintiff was aware of Besenaiz' identity, the alleged improper nature of the infraction, and had received the infraction in 2008 when plaintiff was issued the infraction.

As to defendant Quinn, in his fourth amended complaint, plaintiff alleges that on July 29, 2008, defendant Quinn signed the mail log that accompanied the withheld mail, which plaintiff alleges forms the basis of his claim that defendant Quinn improperly withheld plaintiff's mail. (ECF No. 104 at ¶ 59.) Plaintiff received the form with his withheld mail on July 29, 2008, and included the mail log as an exhibit to his amended complaint filed August 12, 2011. (ECF No. 16 at 32.) Thus, plaintiff was aware of defendant Quinn's identity in 2008, but chose not to name Quinn in the amended complaint, until plaintiff included Quinn in the fourth amended complaint.[10] Plaintiff did not move to substitute defendant Quinn for a Doe defendant named in the original complaint or amended complaints filed before the limitations period expired.

Because plaintiff was aware of the identity of defendants Quinn and Besenaiz, and is not attempting to correct a misnomer or mistake, he cannot claim he was "genuinely ignorant" of their identity at the time the original complaint was filed, precluding relation back under California law. Woo, 75 Cal. App. 4th at 176. Similarly, such new claims do not relate back under federal law because plaintiff cannot demonstrate any "mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).

Thus, plaintiff's claims raised against newly-added defendants Quinn and Besenaiz do not relate back to plaintiff's original or prior amended pleadings.

F. Conclusion

For all of the above reasons, the undersigned recommends that plaintiff's new claims against defendants Quinn and Besenaiz be dismissed as barred by the statute of limitations.

---

[10] On July 5, 2012, the undersigned ordered "counsel for defendants to take all steps necessary to confirm whether R. Gaddi, L.A. Quinn, or Nunez were responsible for the withholding of plaintiff's incoming mail from November 8, 2007, to July 28, 2009, at CSP-SAC." (ECF No. 33 at 30.) In the fourth amended complaint, plaintiff states he "still does not know the identities of Doe Defendants 1-11, or who else was responsible for the withholding of his mail." (ECF No. 105 at ¶ 79.)

VI.  Order and Recommendations

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' requests for judicial notice are granted (ECF Nos. 167-2 & 169-2); and

2. The court takes judicial notice of plaintiff's habeas action filed in the Southern District of California.  (ECF Nos. 167-2 at 5-118 & 169-2 at 5-131.)

Further, IT IS RECOMMENDED that defendants' motions for judgment on the pleadings (ECF Nos. 167 & 169) be granted in part, and denied in part, as follows:

1. Defendants' motion for judgment on the pleadings as to plaintiff's access to the courts and withholding of plaintiff's legal mail be denied;

2. Defendant Pool's motion for judgment on the pleadings as to plaintiff's first and third causes of action be granted;

3. Defendant Pool be granted qualified immunity as to plaintiff's retaliation claim (fourth cause of action), and defendant Pool be dismissed from this action;

4. Defendant Lynch's motion as to plaintiff's retaliation claim (fourth cause of action) be denied without prejudice; and

5. The motion of defendants Quinn and Besenaiz be granted as to plaintiff's retaliation claims (fourth cause of action) because such claims are barred by the statute of limitations, and defendants Quinn and Besenaiz be dismissed from this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 5, 2019

/pent0518.jop

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE