UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANTHONY PENTON,

        Plaintiff,

v.

LAYTON JOHNSON,

        Defendant.

No. 2:11-cv-00518-DJC-KJN

**<u>ORDER</u>**

This case previously proceeded to jury trial on Plaintiff Anthony Penton's First and Fourteenth Amendment claims against Defendant Leyton Johnson for violating Plaintiff's right to mail, notice that his mail was withheld, and to access the courts. At the conclusion of trial, the jury found Defendant liable on each claim.

Defendant has now filed a Motion for New Trial under Federal Rule of Civil Procedure 59 (ECF No. 376) and a Renewed Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(b) (ECF No. 386). For the reasons stated below, the Court denies Defendant's Motions.

## BACKGROUND

### I.    Factual Background

The facts of this case are well known to the Court and parties and need not be fully recited here. In short, beginning in 2004 Plaintiff was incarcerated at California

1

State Prison, Sacramento ("CSP-SAC") but in 2007 Plaintiff was transferred without notice to Kentucky to serve as a witness in a criminal trial.  While he was in Kentucky, CSP-SAC received mail that had been sent to Plaintiff.  This included mail from the District Court for the Southern District of California related to Plaintiff's habeas petition and mail from Plaintiff's family members related to Plaintiff's father's declining health and subsequent death.  This mail was not forwarded to Plaintiff and Plaintiff was not provided any notice that his mail was withheld.  Plaintiff returned to CSP-SAC on June 19, 2008, but was not given any of the withheld mail until July 29, 2008.  By the time Plaintiff received his mail, the deadline to object to the Report and Recommendations recommending denying his habeas petition had passed as had the time for him to appeal the district court's decision to deny his habeas petition.  Plaintiff's father had also passed away by the time Plaintiff received the letters informing Plaintiff of his father's grave medical status.

## II.   Procedural Background

Plaintiff originally filed this suit in 2011.  Following lengthy litigation that included the complete dismissal of this action in 2015 and the reversal of that decision by the Ninth Circuit, Plaintiff filed the Fourth Amended Complaint ("FAC") on April 12, 2018. (*See* FAC (ECF No. 104).)  After the Court ruled on a Motion for Judgment on the Pleadings and Motions for Summary Judgment, Plaintiff's remaining claims were against Defendant Layton Johnson for violating Plaintiff's First and Fourteenth Amendment rights by interfering with Plaintiff's mail and ability to access the courts as well as for failure to notify Plaintiff that his mail was withheld.[1]  (ECF Nos. 251, 254, 256, 278.)  Trial began on September 18, 2023. (*See* ECF No. 354.)   On September 19, 2023, Plaintiff and Defendant rested their respective cases and both parties moved for judgment under Federal Rule of Civil 50. (*See* ECF No. 356.)  The Court deferred its ruling on the parties' motions. (*See id.*)  The following day, the Court

---

[1] Defendant Johnson filed an interlocutory appeal of the district court's denial of summary judgment on qualified immunity grounds.  That decision was later affirmed by the Ninth Circuit.  *See Penton v. Johnson*, No. 22-15665, 2023 WL 7121407 (9th Cir. Oct. 30, 2023).

1    instructed the jury and the parties gave closing arguments.  (*See* ECF No. 364.)  After

2    deliberating, the jury returned a verdict in favor of Plaintiff and awarded Plaintiff

3    $475,000.00 in compensatory damages.  (*See id.*; *see also* ECF No. 362.)  The jury

4    declined to find that Defendant's conduct was malicious, oppressive, or in reckless

5    disregard of Plaintiff's rights such as to justify an award of punitive damages.  (*See* ECF

6    No. 362.)

7          Defendant has now filed a Motion for New Trial under Federal Rule of Civil

8    Procedure 59 (Rule 59 Mot. (ECF No. 376)[2]) and a Renewed Motion for Judgment as a

9    Matter of Law under Federal Rule of Civil Procedure 50(b) (Rule 50 Mot. (ECF No.

10   386)).  These motions are fully briefed (Opp'n to Rule 59 Mot. (ECF No. 387); Opp'n to

11   Rule 50 Mot. (ECF No. 393); Reply re: Rule 59 Mot. (ECF No. 392); Reply re: Rule 50

12   Mot. (ECF No. 394)) and the Court has heard oral argument from the parties on these

13   motions (*see* ECF No. 395).

**RULE 50(b) MOTION**

14

15   **I.    Legal Standard**

16          The standard to grant a motion for judgment as a matter of law under Rule

17   50(b) is "very high."  *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002).  To

18   overturn a jury's verdict by granting such a motion request there be "no legally

19   sufficient basis for a reasonable jury to find for that party on that issue."  *Id.* (internal

20   citations and quotations omitted) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530

21   U.S. 133, 149 (2000)).  The Court may not substitute its view of the evidence for the

22   jury's, make credibility determinations, or weigh the evidence and must draw all

23   inferences in favor of the non-moving party.  *Id.*; *Josephs v. Pac. Bell*, 443 F.3d 1050,

24   1062 (9th Cir. 2006).  Evidence for the moving party that the jury need not believe

25   should be disregarded.  *Costa*, 299 F.3d at 859 (quoting *Reeves*, 530 U.S. at 151).

26   _____

27   [2] Defendant later filed a Supplemental Memorandum of Points and Authorities that included citations to
     the trial transcript, but otherwise was the same as the initial motion filed by Defendant.  (ECF No. 385)
     The Court has reviewed the Supplemental Memorandum provided by Defendant and the citations

28   therein but will cite to Defendant's original Motion for the arguments presented.

1   "The test applied is whether the evidence permits only one reasonable conclusion,

2   and that conclusion is contrary to the jury's verdict." *EEOC v. Go Daddy Software, Inc.*,

3   581 F.3d 951, 961 (9th Cir. 2009).

4        A renewed motion under Rule 50(b) must be preceded by a Rule 50(a) motion

5   made before the case was submitted to the jury. *Id.*  "If the judge denies or defers

6   ruling on the [Rule 50(a)] motion, and if the jury then returns a verdict against the

7   moving party, the party may renew its motion under Rule 50(b)." *Id.*  As a renewed

8   motion, the grounds for judgment made in a Rule 50(b) motion are "limited to the

9   grounds asserted in the pre-deliberation Rule 50(a) motion." *Id.*

10       **II.    Discussion**

11       At trial, Plaintiff sought to present evidence that Defendant was liable under

12  both on an individual and a supervisory basis.  Defendant contends that Plaintiff failed

13  to establish both.  Plaintiff's opposition presents several theories of liability for both

14  individual and supervisor liability.

15       **A. Individual Liability**

16       Plaintiff did not present sufficient evidence at trial to establish that Defendant

17  was liable for the harms alleged by Plaintiff based on his actions in his individual

18  capacity.  Plaintiff argues that Defendant had "personally handled [Plaintiff's] mail,

19  making him individually liable." (Opp'n to Rule 50 Mot. at 6.)  This is not sufficiently

20  supported by the evidence presented such that a juror could reasonably reach this

21  conclusion.

22       This theory of liability rests almost exclusively on the fact that Defendant

23  worked as one of the three or four people in the mailroom where Plaintiff's mail was

24  processed "for nearly nine months[.]" (*Id.* at 7.)  Plaintiff suggests that it is effectively

25  impossible that Plaintiff did not himself "touch[] a single envelope addressed to

26  Penton" during his time in the office. (*Id.*)  There was insufficient evidence presented

27  at trial for the jury to reach such a speculative conclusion.  Given the amount of mail

28  allegedly processed by the mailroom and the presence of other workers, there was no

meaningful evidence that Defendant himself processed Plaintiff's mail.  In fact, at least with regard to legal mail, Defendant testified that the processing of mail was fully delegated to another employee under his supervision in the mail room.  (11/3/23 Tr. at 380.)  The job description document presented as Plaintiff's Exhibit 30 indicates that some of the clerical work of the mailroom would be performed by Defendant. However, the document only provides that it would be "the more difficult" work assigned to the office and there was no evidence presented that Plaintiff's mail would have been considered "more difficult" within the meaning of the job description document.  (Pl.'s Ex. 30.)  Absent any evidence that Defendant was involved in the personal processing of Plaintiff's mail, it would be unreasonable for a juror to conclude that Defendant must have personally processed Plaintiff's mail at some point.

### B.  Integral Participant

The Ninth Circuit has recognized that an official can be held liable even where their "individual actions do not themselves rise to the level of a constitutional violation . . . if the official is an integral participant in the unlawful act." *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (internal quotations and citations removed). In the Ninth Circuit, the integral-participant doctrine permits liability in two situations "those in which (1) the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation or (2) the defendant "set[s] in motion a series of acts by others which [the defendant] knows or reasonably should know would cause others to inflict the constitutional injury." *Id.*

Plaintiff presents integral participant liability as a form of individual liability, rather than supervisorial liability.  Discussions of "integral participant" theories of liability are unclear on this point, likely because the integral-participant doctrine creates liability clearly different from "true" individual liability which holds individuals liable for acts and omissions that deprive another of constitutional rights.  *See Lacey v.*

1   *Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012).  In many ways, integral participant

2   liability is closer to supervisor liability, *see, e.g.*, *Hyde v. City of Willcox*, 23 F.4th 863, 874

3   (9th Cir. 2022) (stating that one way supervisors can be held liable is for "their

4   acquiescence in the constitutional deprivation of which a complaint is made"), and both

5   the Ninth Circuit Model Civil Jury Instructions (*see* Manual of Model Civil Jury Instructions

6   for the District Courts of the Ninth Circuit) and this Court's Jury Instructions at trial (Jury

7   Instructions (ECF No. 357 at 35) place this within the realm of supervisor liability.  But

8   ultimately, whether the integral-participant doctrine is a theory of liability under individual

9   or supervisor liability has little effect on the Court's analysis.  For purposes of clarity, the

10  Court will simply consider the integral participant theory separately.

### 1. Defendant Knew and Acquiesced to Constitutionally Defective Conduct

13  Plaintiff did not present sufficient evidence at trial to establish that Defendant

14  was an integral participant under the first integral participant doctrine theory.  Under

15  that first theory, a defendant can be liable as an integral participant where "the

16  defendant knows about and acquiesces in the constitutionally defective conduct as

17  part of a common plan with those whose conduct constitutes the violation . . . ."  *Peck*,

18  51 F.4th at 889. Plaintiff seeks to analogize this case to *Boyd v. Benton County*, one of

19  the primary cases for this theory of integral participant liability.  374 F.3d 773 (9th Cir.

20  2004); *see Peck*, 51 F.4th at 889 (citing *Boyd* as "illustrative" of the first integral

21  participant theory).  In *Boyd*, the Ninth Circuit held that officers could be held liable for

22  the usage of a flash-bang grenade even when the officers did not themselves utilize

23  the grenade as "every officer was aware of the decision to use the flash-bang, did not

24  object to it, and participated in the search operation knowing the flash-bang was to be

25  deployed."  374 F.3d at 780.

26  *Boyd* is clearly distinguished from the facts presented at trial.  Unlike *Boyd*,

27  there was no evidence that Defendant knew of or acted as part of a common plan to

28  violate Plaintiff's rights.  *See Peck*, 51 F.4th at 889 ("simply being present at the scene

6

1    does not demonstrate that an officer has acted as part of a common plan.")  The

2    apparent presence of general policy for holding mail differs from *Boyd* where the

3    officers in question knew of the specific decision to take actions that would violate an

4    individual's rights and did not object.  There was no evidence presented at trial that

5    Defendant had any knowledge of the specific decision to withhold Plaintiff's mail.

6         Moreover, even if the out to court procedure could be considered a common

7    plan, this theory of integral participant liability relies on "a common plan **with those**

8    **whose conduct constitutes the violation** . . . ."  *See* 51 F.4th at 889 (emphasis

9    added).  For a jury to find Plaintiff liable under such a theory, there is a necessary

10   predicate finding that another individual had violated Plaintiff's constitutional rights.

11   Such a question was never presented to the jury nor was the jury instructed on making

12   such a finding.  (*See* Jury Instructions; *see also* Verdict Form (ECF No. 362).)  As a

13   result, insufficient evidence was presented at trial for a jury to reasonably find

14   Defendant liable on a theory that Defendant was an integral participant by

15   acquiescing to constitutionally defective conduct.

16        **2.  The Defendant "Set in Motion" a Series of Acts by Others**

17        At trial, Plaintiff did not establish Defendant's liability as an integral participant

18   under a theory that "the defendant sets in motion a series of acts by others which the

19   defendant knows or reasonably should know would cause others to inflict the

20   constitutional injury."  *Peck*, 51 F.4th at 889 (internal quotations, brackets, and

21   citations removed).  This is sometimes called the "foreseeable consequence" prong of

22   integral participant liability.  Plaintiff's argument that Defendant was liable on this basis

23   rests largely on a law of the case argument.  Plaintiff contends that the Ninth Circuit's

24   statement, made in its decision denying Defendant's appeal of the denial of summary

25   judgment, that "[Defendant] should have sought [Plaintiff]'s address and forwarded

26   his mail once [Plaintiff] did not return to the prison within the time stated in the

27   regulation" means Defendant is necessarily individually liable as an integral

28

7

1  participant under the foreseeable consequence prong.  (Opp'n to Rule 50 Mot. at 13–
2  14;) *see Penton*, 2023 WL 7121407, at *3.

3         The Ninth Circuit's decision is not as dispositive as Plaintiff suggests.  The Ninth
4  Circuit's findings focused on whether the denial of qualified immunity on summary
5  judgment was proper.  *See Penton*, 2023 WL 7121407, at *3 ("The district court did
6  not err in *denying qualified immunity* on Penton's due process right-to-notice
7  allegation." (emphasis added)).  The statement that Defendant "should have sought
8  Penton's address and forwarded [Plaintiff's] mail" was thus made in the context of
9  deciding whether the withholding of mail would violate Plaintiff's rights and if those
10 rights were clearly established at the time of the violation.  *Id*.  Though the decision
11 does direct its statement toward Defendant, the Ninth Circuit did not engage in any
12 analysis of Defendant's liability and does not appear there was an intent to suggest
13 that the Defendant was liable based on the foreseeable consequences of his actions.
14 *See Penton*, 2023 WL 7121407, at *3.

15        Plaintiff's argument that Defendant "set in motion" a series of acts by others is
16 also based on Defendant's failure to "direct anyone to send [Plaintiff's] mail to the U.S.
17 Marshals" or to the prison in Kentucky where Plaintiff was being housed.  (Opp'n to
18 Rule 50 Mot. at 14.)  However, Plaintiff has cited no case that supports the idea that
19 Defendant's failure to instruct subordinates generally can be considered the
20 Defendant "set[ting] in motion a series of acts by others" sufficient to create integral
21 participant liability.  *Peck*, 51 F.4th at 889.  Plaintiff also presented no evidence at trial
22 concerning Defendant's knowledge of the withholding of Plaintiff's mail or the failure
23 to notify him.  This presents a vastly different situation from other cases where
24 foreseeable consequence integral participant liability has been found.  *See id*. at 889–
25 90 (citing *Reynaga Hernandez v. Skinner*, 969 F.3d 930 (9th Cir. 2020) where an officer
26 was held liable for ordering the plaintiff be "picked up" and citing *Nicholson v. City of
27 Los Angeles*, 935 F.3d 685, 692 (9th Cir. 2019) holding an officer liable for ordering or
28 consulting on the decision to the arrest the plaintiff).

1    Plaintiff did not present sufficient evidence at trial to support integral

2    participant liability under either prong.  While this is not to say that Plaintiff could not

3    establish Defendant as liable on these facts under some other theory of liability, the

4    evidence present would not permit a jury to reasonably conclude that Defendant was

5    an integral participant in the violation of Plaintiff's rights via a common plan with

6    others who violated Plaintiff's rights or as a reasonably foreseeable consequence of

7    the actions of others which Defendant set in motion.

8    **C.  Supervisory Liability**

9    Defendants in Section 1983 actions can be held liable as supervisors for either

10   their own personal involvement in the constitutional deprivation or a "sufficient causal

11   connection between the supervisor's wrongful conduct and the constitutional violation.'"

12   *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  Supervisors can be held liable for "1)

13   their own culpable action or inaction in the training, supervision, or control of

14   subordinates; 2) their acquiescence in the constitutional deprivation of which a

15   complaint is made; or 3) for conduct that showed a reckless or callous indifference to

16   the rights of others."  *Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022).  This

17   includes liability for the actions of subordinates where "the supervisor participated in

18   or directed the violations, or knew of the violations [of subordinates] and failed to act

19   to prevent them."  *Vazquez v. County of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020).  Unlike

20   a theory of individual liability, sufficient evidence was presented at trial to support

21   supervisory liability of Defendant.

22   **1.  Usage of Out to Court Procedure**

23   At trial, Plaintiff presented sufficient evidence for a jury to reasonably conclude

24   that Plaintiff was liable as a supervisor for advancing the procedure for withholding

25   mail for inmates labeled as "out to court" within the system checked by the mailroom

26   staff.  "Advancing a policy that requires subordinates to commit constitutional

27   violations is always enough for § 1983 liability . . . ."  *OSU Student Alliance v. Ray*, 699

28   F.3d 1053, 1076 (9th Cir. 2012).  A supervisory official can be held liable if they

1   "promulgated, implemented, or in some other way possessed responsibility for the

2   continued operation of" the out to court procedure and that the violation of Plaintiff's

3   rights "occurred pursuant to that policy." *Id.* "When a supervisory official advances or

4   manages a policy that instructs its adherents to violate constitutional rights, then the

5   official specifically intends for such violations to occur." *Id.*

6         The Court instructed the Jury that they could find Defendant liable as a

7   supervisor provided, in part, that Defendant "directed his subordinate(s) in the acts or

8   failure to act that deprived the plaintiff of these rights." (Jury Instructions at 37.)

9   Defendant testified at trial that he trained his subordinates on the out to court

10  procedure that ultimately caused Plaintiff's mail to be withheld. (Tr. 9/19/23 at

11  350:17–351:1.) This out to court procedure required withholding all inmate mail

12  indefinitely while they were designated as out to court, thus the policy instructed the

13  mailroom workers to violate rights to mail and access to courts. Defendant

14  acknowledged that Title 15 Regulations were violated by the withholding of Plaintiff's

15  mail even though he knew the mailroom needed to comply with these regulations.

16  (Tr. 9/19/23 at 345:7–14, 347:9–13.) The evidence presented at trial also supports

17  that, as a result of the out to court procedure, Plaintiff's mail was withheld. Based on

18  this evidence a jury could reasonably conclude that the out to court procedure

19  violated Plaintiff's rights under the First and Fourteenth Amendments, as described in

20  the Jury Instructions (Jury Instructions at 39–43), and that Defendant's training of staff

21  on the out to court procedure amounted to the direction of subordinates in acts that

22  resulted in that deprivation.

23         Defendant argues that his motion should be granted in part because "Plaintiff

24  presented absolutely zero evidence that [Defendant]" had the policy-making authority

25  or was responsible for the out to court procedure at all. (Reply re: Rule 50 Mot. at 4.)

26  But Defendant's assertion that this theory of liability requires Defendant to have had

27  policy making power is misguided. It is sufficient that Defendant "promulgated,

28  implemented, *or in some other way possessed responsibility for the continued*

1   *operation of*" the out to court procedure.  *OSU Student Alliance*, 699 F.3d at 1076

2   (emphasis added)  It is not necessary that Defendant had the authority or personal

3   responsibility for creating the policy in the first instance; that he continued and

4   managed its operation is sufficient.  *Id.*  The evidence presented at trial would be

5   sufficient for a jury to reasonably reach that conclusion.

6         Accordingly, the Court denies Defendant's renewed Rule 50 motion as Plaintiff

7   presented evidence from which a jury could reasonably find Defendant liable as a

8   supervisor for violating Plaintiff's right to mail and right to access the courts based on

9   his advancement of the out to court procedure.

10         **2.  Failure to Train**

11         Plaintiff also presented sufficient evidence at trial to support a failure to train

12   theory of supervisor liability.  In order to hold a supervisor liable for the failure to train,

13   the plaintiff must show the defendant "was deliberately indifferent to the need to train

14   subordinates, and the lack of training actually caused the constitutional harm or

15   deprivation of rights." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir.

16   2014).  "Under this standard, the plaintiff must allege facts to show that the official

17   disregarded the known or obvious consequence that a particular omission in their

18   training program would cause municipal employees to violate citizens' constitutional

19   rights." *Hyde*, 23 F.4th at 874 (internal quotations, brackets, ellipsis, and citations

20   removed).

21         Plaintiff presented evidence on which a juror could reasonably find that

22   Defendant was aware of the need to train his subordinates.  Defendant testified that

23   he was aware that California Code of Regulation Title 15 was responsible for providing

24   the legal standards that a prison in California must follow, including how legal and

25   regular mail should be handled, and that it was part of his job to ensure that the

26   mailroom followed Title 15.  (Tr. 9/19/23 at 345:7-14.)  Plaintiff also provided

27   documentary evidence in the form of Plaintiff's job description, signed by Defendant

28   that lists 15% of Defendant's duties and responsibilities as being to "[e]nsure[] all mail

1   is being processed in accordance with the California Code of Regulations, Title 15, the

2   Department Operations Manual and Operational Procedure #17." (PX-30 at 1.)  Also

3   submitted into evidence was Title 15 of the California Code of Regulations as it

4   existed in 2008.  (PX-1.)  This includes Section 3147(a)(8) which provides the following:

5
> Forwarding Mail. Mail received for an inmate who has been
6   > transferred from the facility where the mail is received will
> be immediately forwarded to the facility, administrative
7   > office or agency to whom the inmate's custody has been
> relinquished, except as otherwise stated in this section.
8

9   (*Id.* at 7.)

10          Despite Defendant testifying that he knew he was responsible for ensuring

11  compliance with Title 15, Plaintiff elicited testimony from Defendant that the mailroom

12  followed the out to court procedure where the mailroom would withhold mail for any

13  inmate with an "out to court" status and check after three days to see if they had

14  returned.  (Tr. 9/19/23 at 350:17–351:1.)  As previously discussed, Defendant also

15  testified that he had trained the mailroom staff on this procedure.  (Tr. 11/03/23 at

16  351:11–15.)

17          From these facts, a jury could reasonably conclude that Defendant knew of,

18  supported and, most importantly trained his subordinates on the out to court

19  procedure that he knew was deficient.  Defendant contends that Plaintiff did not

20  provide any evidence that "Johnson knew, or it was obvious that the particular worker

21  at issue required additional supervision or training." (Reply re: Rule 50 Mot. at 10.)  But

22  the evidence at trial was sufficient for the jury to find that the training provided by the

23  Plaintiff was deficient in the first instance.

24          Accordingly, Defendant's Rule 50 motion will also be denied as Plaintiff also

25  presented sufficient evidence for the jury to find the existence of supervisor liability for

26  violating Plaintiff's right to mail and right to access the courts based on Defendant's

27  failure to train his subordinates.

28  *////*

1

### D.  Fourteenth Amendment Claim

For similar reasons, a jury could have found for Plaintiff on the Fourteenth Amendment claim for failure to provide Plaintiff notice that his mail was being withheld.  While most of the evidence presented at trial related to the out to court procedure, the evidence also provided sufficient basis for a jury to reasonably conclude that the out to court procedure included not notifying the individual that their mail was withheld.  As discussed above, that procedure provided that the mail was withheld and workers in the mailroom would check every so often to see if the inmate had returned from out to court status.  No part of the procedure involved providing notice to the affected inmate.

Moreover, at trial, Defendant testified that the system the mailroom workers checked did not have information about where out to court inmates, such as Plaintiff, were located.  Specifically, Plaintiff's Counsel elicited the following testimony from Defendant:

> Q.     I understand. So -- but according to you . . . [the Distributor Data Processing System] doesn't say where an inmate is located when they're out to court; is that your testimony?
> A.     Yes.

(Tr. 9/19/23 at 351:24–352:2;)

> Q.     So it's just -- it's your testimony the computer system did not say where an inmate was when they were out to court and that this applies in state, out of state?
> A.     Correct.
> Q.     And this is the -- this is the same, 2007, 2008, 2009, correct?
> A.     Correct.

(Tr. 9/19/23 at 352:15–21).

The jury could have reasonably determined that the out to court procedure implicitly included not notifying Plaintiff of his withheld mail given that, as described, mailroom workers only checked for when an inmate returned and, by his own

1    admission, the system checked by mailroom workers did not even contain information

2    about where the inmate was located.  Based on this evidence, a juror could

3    reasonably find that, for the same reasons discussed as to Plaintiff's other claims, *see*

4    *supra* Rule 50(b) Motion II.C.1–2, Defendant violated Plaintiff's Fourteenth

5    Amendment rights in his role as a supervisor based on the continued use of the out to

6    court procedure and the failure to properly train Defendant's subordinates in the

7    mailroom.

8    **E. Qualified Immunity**

9    While Defendant also contends that Defendant is entitled to qualified immunity,

10    the Ninth Circuit's prior decisions in this case, the jury's findings at trial, and the above

11    reasoning compel a conclusion that Defendant is not entitled to qualified immunity.  In

12    determining whether an officer is entitled to qualified immunity, the Court must

13    decide whether the defendant violated the plaintiff's rights and whether those rights

14    were clearly established at the time of the violation.  *Peck v. Montoya*, 51 F. 4th 877,

15    887 (9th Cir. 2022).

16    At trial, the jury resolved the first question by finding that Defendant had

17    violated Plaintiff's rights.  As discussed, such a finding is a reasonable conclusion from

18    the evidence presented at trial.

19    The Ninth Circuit has already answered the second question in deciding the

20    latter appeal in this case.  In reviewing the denial of summary judgment on qualified

21    immunity grounds, the Ninth Circuit found that access to courts was a clearly

22    established right at the time Plaintiff's main was withheld and that "Johnson's

23    withholding of mail violated clearly established law" that Plaintiff had a right to mail.

24    *Penton v. Johnson*, No. 22-15665, 2023 WL 7121407, at *1–2 (9th Cir. Oct. 30, 2023).

25    The Ninth Circuit also found that the district court did not err in denying qualified

26    immunity as to Plaintiff's right to notice claim.  *Id.* at *2–3.

27    Given that the jury found that Defendant had violated Plaintiff's rights (and the

28    Court affirmed that finding as supported by the evidence), the Ninth Circuit's decision

1  that these rights were clearly established effectively forecloses a finding that

2  Defendant was entitled to qualified immunity.  As such, Defendant's Rule 50 Motion is

3  denied on this basis and, in light of the Court's other decisions above, in its entirety.[3]

4  **RULE 59 MOTION**

5      Plaintiff's Rule 59 New Trial Motion in part raises the same arguments as

6  Defendant's Rule 50 Motion concerning the sufficiency of the evidence presented at

7  trial (*i.e.*, that there was insufficient evidence to state a claim under either individual or

8  supervisor liability theories).  These arguments are rejected on the same basis as

9  discussed above.  *See EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 966 (9th Cir.

10  2009).  Defendant's Rule 59 Motion also raises grounds separate from those in the

11  Rule 50 motion: (1) there is no evidence that there was a loss of a nonfrivolous claim,

12  (2) the amount of damages awarded was excessive and unsupported by the evidence,

13  (3) the verdict represents a miscarriage of justice, and (4) errors of law justify a new

14  trial.  (*See* Rule 59 Mot.)

15  **I.      Legal Standard**

16      Rule 59(a) partially provides that after a jury trial, a court may grant a new trial

17  "for any reason for which a new trial has heretofore been granted in an action at law in

18  federal court[.]"  As Rule 59 does not provide any specific grounds on which such a

19  motion should be granted, "it allows such a motion to be granted for any of the

20  reasons for which new trials have heretofore been granted in actions at law in the

21  courts of the United States."  *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035

22  (9th Cir. 2003) (internal citations and quotations removed).  "Historically recognized

23  grounds include, but are not limited to, claims that the verdict is against the weight of

---

[3] In opposing Defendant's Motion, Plaintiff argued that the Motion should fail as Defendant did not raise the same grounds in making the initial Rule 50(a) Motion.  The Court need not reach this issue given the above.  However, it does still note that Defendant did raise a Rule 50(a) motion "both on the merits and to qualified immunity" but that the Court immediately deferred ruling on that motion without permitting further argument. (11/3/23 Tr. at 393:3–7.)  Based on this, it appears that Defendant's Rule 50(a) motion was sufficient.  *See Go Daddy Software, Inc.*, 581 F.3d at 962 ("Rule 50(b) may be satisfied by an ambiguous or inartfully made motion under Rule 50(a)" (citations and internal quotations omitted)).

the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

## II.   Discussion

### A.  Loss of Nonfrivolous Claim

Sufficient evidence was presented at trial to establish that Penton lost access to a nonfrivolous claim.  Defendant argues that rather than showing loss of a claim, the evidence at trial demonstrated "Plaintiff was able to reopen his habeas petition and pursue his claim fully." (Rule 59 Mot. at 6.)  However, contrary to Defendant's arguments, the standing portion of an access-to-court claim – the part of the cause of action that requires the loss of a nonfrivolous claim – does not require that Plaintiff suffered an ongoing, unremedied harm.  As was clarified in one of the prior appeals of this action, "[Plaintiff]'s constitutional injury was **complete** when his ability to challenge the magistrate judge's report and recommendation was impaired[.]" *Penton v. Pool*, 724 Fed. Appx. 546, 549 n.1 (9th Cir. 2018) (emphasis added).  Thus, whether Plaintiff was ultimately able to reopen his habeas petition or pursue his claims is irrelevant. Plaintiff needed only to present evidence from which the jury could reasonably conclude that Plaintiff lost a non-frivolous claim at that time.  At trial, Plaintiff testified that he could not file timely objections to the Report and Recommendations because he did not receive the order extending the time to file such objections.  (*See* Tr. 9/18/23 at 126:3–5; 140:22–25.)  This testimony is consistent with Defendant's testimony on the out to court procedure and the docket from Plaintiff's habeas action that showed Plaintiff had not filed objections.  (*See* Tr. 9/19/23 at 350:19-21; JX-1.)  A jury could reasonably conclude that Plaintiff's ability to object to the Report and Recommendations was impaired.  This satisfies the injury requirement of an access-to-court claim.  *See Penton*, 724 Fed. Appx. at 549 n.1.

////

////

16

1

### B. Amount of Damages

2       The amount of damages awarded was supported by the evidence presented at

3   trial.  Plaintiff presented the testimony of two expert witnesses, Dr. Stan Smith and Dr.

4   Stuart Grassian.  Dr. Grassian testified on the psychological effects of Plaintiff's inability

5   to receive mail as well as the loss of his legal remedies and inability to communicate

6   with his father (Tr. 9/18/23 at 170:12–15, 226:19–23, 244:4–7) while Dr. Smith testified

7   about the damages resulting from a loss of quality of life Plaintiff experienced as a

8   result of "the failure to get mail and the consequences and circumstances surrounding

9   that." (Tr. 9/19/23 at 284:10–23.)  Dr. Smith provided the jury with expert testimony

10  from which the jury could make determinations about the effects of these events and

11  Dr. Grassian provided expert testimony about how the jury could calculate the

12  monetary value of the loss of quality of life Plaintiff suffered.  While Dr. Smith testified

13  that he had calculated the loss of quality of life Plaintiff suffered at a particular level

14  that Plaintiff provided, Dr. Smith was also clear that his report was not a determination

15  of what loss of quality of life Plaintiff actually suffered but "a tool and an aid and a

16  guide" and that if the jury believed the damage Plaintiff's quality life was less, they

17  could appropriately adjust the damages he had calculated. (*Id.* at 305:2–11.)

18      Contrary to Defendant's assertions that this testimony resulted in speculative

19  and unsupported damages, the expert testimony provided clear support for the

20  damages awarded that was uncontested by another expert.  Plaintiff provided expert

21  testimony regarding both the harm Plaintiff suffered and testimony about calculating

22  damages based on the amount of harm suffered.  The jury thus ultimately had

23  sufficient evidence on which to determine the damages awarded.  In light of the

24  testimony, the award also does not appear "excessive" and Defendant provides no

25  support for that contention beyond conclusory arguments.

26      Accordingly, Defendant's Rule 59 Motion is denied on this issue.

27  ////

28  ////

**C. Errors of Law**

**1. Indemnity Evidence**

Despite Defendant's arguments to the contrary, the Court properly permitted Plaintiff to question Defendant regarding his potential indemnification.  Prior to trial, the Court granted Defendant's Motion in Limine to preclude Plaintiff from referencing Defendant from referring to Defendant's possible indemnification.  (ECF No. 351.)  Yet during opening argument, Defense Counsel made several statements to the jury that the Court ruled had opened the door to this information.  This included the opening lines of Defense Counsel opening argument in which she told the jury:

> Mr. Penton is suing Mr. Johnson personally.  I want to be very clear about that, ladies and gentlemen.  Mr. Penton is not suing the State of California or the other people that are working – that were working in the mailroom at the time or the prison – or – I'm sorry – CDCR, It's Mr. Johnson personally.  Mr. Penton is even seeking punitive damages against Mr. Johnson because he contends his conduct was so egregious. And that's just not true.

(Tr. 9/18/23 at 71:2-13.)  The Court noted that Defense Counsel had even emphasized the word "personally" in this statement.  (*Id.* at 101:7-8.)  Based on these statements, Plaintiff argued that the Defense Counsel had opened the door by implying that "there are no deep pockets and that the only pockets are the Defendant's."  (*Id.* at 100:13-14.)  The Court ultimately agreed finding that the statements at opening argument could lead a reasonable jury to believe that Defendant was being held personally liable, without any indemnification.  (*Id.* at 100:14-21.)

The Court finds that the decision to permit Plaintiff to elicit testimony on indemnification was not in error.  The Court originally excluded this information because, as Defendant argues in his motion, evidence of indemnification has the potential to influence jury determinations.  (*See* Rule 59 Mot. at 7-8.)  The eventual decision to permit Plaintiff to explore this issue was based on Defense Counsel's

decision to emphasize that Plaintiff was suing Defendant "personally" and that these statements could easily mislead a reasonable jury to come to the opposite conclusion. Other courts in this circuit have noted the possibility that litigants could open the door to issues of indemnification.  *See, e.g.*, *P.C. v. City of Los Angeles*, 2011 WL 13153241, at *3 (C.D. Cal. Aug. 22, 2011).

Defendant argues that Defense Counsel was attempting to distinguish between a suit against Defendant for his own actions – rather than those of the entity he worked for – to reinforce that the jury would need to find that Defendant *personally* participated in the constitutional violation to hold him liable.  This argument is unpersuasive.  Though this very well may have been Defense Counsel's intention, that purpose was unclear and the statements, as made, could very easily mislead a reasonable juror.  Contrast the statement that the Court concluded opened the door with a later statement: "Mr. Penton is suing Mr. Johnson personally for what he did, not what his subordinates did[,]" (Tr. 9/18/23 at 74:23–24).  This statement, the Court concluded at trial, did not present the same issues as the earlier, more problematic statement, as it would reasonably be understood to help the jury understand that Defendant should not be held liable under a theory of respondeat superior.  This is not true of the other statements made during opening argument.

Accordingly, the Court denies this portion of Defendant's Rule 59 Motion.

### 2. Jury Instruction Issues

Defendant argues that Jury Instruction 31, the instruction for Plaintiff's access to court claim, was improper as it "did not include a definition of 'active interference' that required intentional or malicious action for the purpose of interfering with Plaintiff's right to litigate."  As an initial point, the Court notes it had originally intended to include in the instruction that "the interference with Plaintiff's right to litigate including access to legal mail, must have been an affirmative or <u>intentional</u> act."  (Tr. 9/20/23 at 406:11–12 (emphasis added).)  It was on Defendant's own suggestion that the Court struck that sentence from the instruction.  (*Id.* at 408:23 ("Ms. Cahill: . . . So, I mean, I

19

1   guess we could strike that whole sentence.").)  Thus, Defendant has waived any right

2   to object that the instruction did not include a statement that the interference must be

3   "intentional".

4          There was no waiver as to Defendant's objection to the Court's excluding the

5   word "malicious," which the Court did over the Defendant's objection.  Defendant

6   contends that this was in error as, in Defendant's view, active interference requires that

7   the defendant's action was intentional or malicious.  In support of the contention that

8   active interference requires a malicious action, Defendant only provides a citation to a

9   single District Court case, *Stratmon v. Morris*, No. 1:12-cv-01837-DAD-SAB, 2018 WL

10  460545 (E.D. Cal. Jan. 18, 2018), which states that "prison officials are prohibited from

11  engaging in malicious, affirmative, and intentional interference in a prisoner's right to

12  litigate."  *Id.* at *2.  This statement lacks any citation.  It also appears unsupported by

13  substantial case law from other circuits.  The Fourth Circuit case, *Pink v. Lester*, which

14  Defendant originally cited in proposing a jury instruction for the access to court claim,

15  only found that negligence could not support a denial of access claim.  52 F.3d 73, 78

16  (1995).  Similarly, the Fifth Circuit and Tenth Circuit have only rejected negligence as

17  insufficient.  *See Jackson v. Procunier*, 789 F.2d 307, 310 (5th Cir. 1986); *Simkins v.*

18  *Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005).  In its decision, the Tenth Circuit even

19  expressly stated that an access to court claim "does not require an additional showing

20  of malicious motive."  *Simkins*, 406 F.3d at 1242.

21         Given the above, the decision to not include "malicious" within the jury

22  instruction for Plaintiff's access to court was not improper.  The instruction, as given,

23  stated: "The act in question by Defendant Johnson must constitute 'active

24  interference' with the plaintiff's ability to access the courts. Active interference means

25  the defendant was more than merely negligent." (Jury Instructions at 37.)  This

26  accurately represents the law in the Ninth Circuit on this issue.  *Silva v. Di Vittorio*, 658

27  F.3d 1090, 1102 (9th Cir. 2011), *overruled on other grounds as stated by Richey v.*

28

1  *Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).  Therefore, this instruction was not

2  inaccurate and a new trial is not justified on this basis.

3      Defendant also briefly argues that the Court erred in instructing the Jury "that

4  Plaintiff could recover for emotional distress and loss of enjoyment of life[.]"  (Rule 59

5  Mot. at 9.)  Defendant does not present any further argument either in his motion or

6  reply brief, instead pointing to Defendant's Motion in Limine #6 ("MIL #6" (ECF No.

7  321)) which the Court denied.  (*See id.*; *see also* Reply re: Rule 59 Mot. at 7.)  As the

8  Court stated in ruling on this motion, Ninth Circuit case law is clear that the Prison

9  Litigation Reform Act's typical bar on recovery for mental or emotional injury without a

10 prior showing of physical injury, *see* 42 U.S.C. § 1997e(e), does not apply to First

11 Amendment claims.  *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir.1998) ("[Section]

12 1997e(e) does not apply to First Amendment Claims regardless of the form of relief

13 sought.")  Thus, the Court instructing the jury that Plaintiff could recover on these

14 bases was not improper.

15     Given the above, the Court denies Defendant's Rule 59 Motion related to jury

16 instruction issues and, given that all other bases have been denied, the Rule 59

17 Motion in its entirety.

18                         **CONCLUSION**

19     For the reasons stated, it is hereby ordered that:

20     1.  Defendant's Renewed Rule 50 Motion (ECF No. 386) is DENIED; and

21     2.  Defendant's Rule 59 Motion (ECF No. 376) is DENIED.

22

23     IT IS SO ORDERED.

24  Dated:  **July 12, 2024**

25                              Hon. Daniel J. Calabretta
                                UNITED STATES DISTRICT JUDGE
26

27  DJC1 – penton11cv00518.50+59

28