UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY PENTON,<br><br>Plaintiff,<br><br>v.<br><br>LAYTON JOHNSON, et al.,<br><br>Defendants. | No. 2:11-cv-00518-DJC-KJN<br><br><br><br>**ORDER** |

Presently pending are Plaintiff Anthony Penton's Motions for Attorney's Fees and Costs based on Plaintiff's success in obtaining a judgment a trial. (ECF Nos. 378, 401.) Plaintiff initially filed a Motion for Attorney's Fees and Costs on October 20, 2023, (ECF No. 378) but following further post-trial litigation, filed a "Supplemental" Motion (Mot. at (ECF No. 401)) which substantially altered Plaintiff's requested fees and costs.

As the parties briefing is directed to the more recent of the two motions, that is the relevant motion for fees and costs before the Court. The original motion is denied as moot. For the reasons stated below, the Court grants in part and denies in part Plaintiff's Motion.

////

////

1

## I. Defendant Layton Johnson's Pending Appeal

A little over a week after Plaintiff filed the Present Motion for Attorney's Fees, Defendant Johnson filed a notice of appeal. (*See* ECF No. 402.) As this notice of appeal was filed after the present motion, the Court is not divested of jurisdiction simply because of the pending appeal. *See League of Women Voters of California v. F.C.C.*, 751 F.2d 986, 990 (9th Cir. 1985). The Court has the discretion to rule on the motion for attorney's fees, defer its ruling, or dismiss the motion without prejudice. *See* Fed. R. Civ. P. 58 advisory committee notes 1993 amendment.

The Court will rule on the Motion for Attorney's Fees.

## II. Request for Attorney's Fees

The prevailing party on a claim brought under 42 U.S.C. § 1983 "is entitled to reasonable attorneys' fees unless special circumstances would render such an award unjust." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014). However, "[t]he district court has discretion in determining what fees are 'reasonable.'" *Id*. The lodestar method is typically used in determining reasonable attorney's fees. *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996).

In total, Plaintiff's Motion requests $947,747,00 in attorney's fees with a 2.0 multiplier applied. The requested fees are broken into separate categories for (1) obtaining a monetary judgment, (2) successfully reopening Plaintiff's habeas petition, and (3) defending the jury's verdict against Rule 50 and 59 motions. These shall be assessed separately.

### A. Monetary Judgment Award

For obtaining a monetary judgment at trial, Plaintiff requests $712,500.00 in attorney's fees. Fees for violation of Section 1983 are capped by the PLRA to 150% of the jury's award. 42 U.S.C. § 1997e(d)(2). Based on Plaintiff's counsel's claim that they worked 5,092.25 hours on the case at the adjusted Criminal Justice Act ("CJA") rates, Plaintiff's calculation of attorney's fees totals $982,903.13. However, Section 1997e(d)(2) mandates that the fees be capped at $712,500.00 (150% of the

$475,000.00 monetary judgment awarded by the jury). Defendant makes several arguments that further reductions which would bring the total fees below this cap are warranted.

**1. Reduction for Partial Success**

The Court will impose a reduction in the hours worked based on the fact that Plaintiff only had success as to a single Defendant. Defendant argues that a discretionary reduction in the calculation of hours worked should be imposed as Plaintiff only obtained partial success as Plaintiff prevailed against a single defendant despite originally suing several defendants. A discretionary reduction on this basis is appropriate. *See Webb v. Sloan*, 330 F.3d 1158, 1168–70 (9th Cir. 2003). While the Court understands that Plaintiff's Counsel took efforts to remove hours that were incurred specifically for other defendants who were ultimately dismissed, this does not account for the many hours billed in a mixed or joint fashion. Accordingly, the Court will apply a 20% reduction from the $982,903.13 total amount of fees claimed.[1]

**2. Billing Practices**

Defendant argues that the form of Plaintiff's Counsel's billing warrants a reduction as Plaintiff's Counsel utilizes quarter-hour increments, block-billing, and vague entries. The Court is unpersuaded by this argument. Defendant mostly provides broad argument and citations about the inadequacies with quarter-hour billing and block billing. It may be correct that these billing practices are imprecise and can present issues for assessing reasonable attorney's fees, but this is not a sufficient basis to impose a substantial reduction in attorney's fees. Defendant disputes some entries, but many arguments raised do not appear to provide a legitimate basis for objection. For example, Defendant complains that Plaintiff's

---

[1] Courts generally impose a partial success reduction by reducing the hours worked. *See Webb*, 330 F.3d at 1168–70. As Plaintiff voluntarily applied different rates related to the CJA rate in place at the time the hours were incurred, the Court cannot simply reduce the total hours worked. Instead, the Court will simply apply a 20% reduction to total fees for obtaining the monetary judgment. This distinction makes no difference in the ultimate calculation of attorney's fees.

3

Counsel billed "multiple hours" by "multiple attorneys" preparing for oral argument before the Ninth Circuit "even though one attorney argued." (Opp'n (ECF No. 404) at 6.) Such arguments seem without merit; it is entirely natural to have multiple attorneys involved in preparation for appellate argument. The documentation provided by Defendant in which specific entries are highlighted as duplicative, vague, or involving "internal communication" are similarly unpersuasive. (ECF No. 404-1 at 2.)

Notably, Plaintiff's Counsel has also represented that they made substantial cuts to their hours calculation including removing fees billed by some associates. This also includes not billing for any time for Attorney Harrison Frahn in 2023, including for trial preparation or trial itself – events that typically involve significant expenditures of time. Even if the hours worked were inflated (which the Court does not conclude to be the case), these voluntary reductions should more than offset those allegedly inflated hours.

Defendant also makes a passing complaint that the billing includes "billing for clerical work[,]" though Defendant does not specify in the Opposition or declaration attached what clerical work was improperly included. The Court notes that what is considered "clerical" is typically construed narrowly as the line between secretarial work and clerical work can be gray. *See Mitchell v. Chavez*, No. 1:13–cv–01324–DAD–EPG, 2018 WL 3218364, at *12 (E.D. Cal. June 29, 2018). From a review of the billing records provided by Plaintiff's Counsel, it is not clearly apparent that any of the billed hours are for purely clerical work. Thus, any objection on this ground is denied.

### 3. CJA Rate

The hourly rate for fees is capped at 150% of the maximum authorized hourly rate for court appointed counsel under the CJA. 42 U.S.C. § 1997e(d)(3). The CJA rate is set by the Judicial Conference as required by 18 U.S.C. § 3006A. These are the rates over the course of Plaintiff's counsel's representation:

////

////

4

| Relevant Period | CJA Rate | 150% CJA Rate |
|---|---|---|
| 01/01/2024 to present | $172.00 | $258.00 |
| 01/01/2023 through 12/31/2023 | $164.00 | $246.00 |
| 01/01/2022 through 12/31/2022 | $158.00 | $237.00 |
| 01/01/2021 through 12/31/2021 | $155.00 | $232.50 |
| 01/01/2020 through 12/31/2020 | $152.00 | $228.00 |
| 02/15/2019 through 12/31/2019 | $148.00 | $222.00 |
| 03/23/2018 through 02/14/2019 | $140.00 | $210.00 |
| 05/05/2017 through 03/22/2018 | $132.00 | $198.00 |
| 01/01/2016 through 05/04/2017 | $129.00 | $193.50 |

Importantly, these numbers, when multiplied by 150%, represents a cap on the hourly rate. Courts consider what is an appropriate hourly rate separately. *See e.g.*, *Mitchell*, 2018 WL 3218364, at *5. As reasonable attorney's fees in this district fully exceed this cap – even when accounting for lesser experience – the cap amount is typically what is used to calculate the lodestar amount. *See Id.* at *6.

Plaintiff correctly notes that attorney's fees, as well as the cap, are calculated based on the time at which they are sought, not when the fees were incurred. *See Id.* (collecting cases). Nevertheless, Plaintiff has voluntarily chosen to calculate rates based on when they occurred instead, despite being able to reasonably request the higher, present rate under the law. The rates applied by Plaintiff are thus reasonable.

The Court does note that Plaintiff's Counsel has billed hours for work performed by paralegals. Plaintiff can request fees for paralegal work subject to the same 150% CJA cap under the PLRA. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989); *Perez v. Cate*, 632 F.3d 553, 554 (9th Cir. 2011). However, as noted above, there is an important distinction between the cap and a reasonable rate. Courts in this district have regularly awarded $125 per hour as a reasonable rate for paralegal work. *Rosenof v. Kijakazi*, No. 2:20-cv-01491-CKD, 2022 WL 2442235, at *3 (E.D. Cal. July 5,

5

2022) (collecting cases). The records provided by Plaintiff show billing for 468.5 paralegal hours for which the $125 per hour rate will be applied, totaling $58,562.50 in fees.

Finally, review of the provided records also shows what appears to be billing for non-attorney or paralegal staff totaling 121.75 hours. The Court will consider these staff members to perform the role of legal assistants. Courts in this district generally consider a rate of $100 per hours to be reasonable for legal assistants, which the Court will apply here. *See Hoirup v. Pro. Eng. In California Gov.*, No. 02-cv-662-GEB-PAN, 2006 WL 2791158, at *5 (E.D. Cal. Sept. 27, 2006) ("the prevailing hourly rate for legal assistants is $110"); *see also McAfee v. Metro. Life Ins.*, 625 F. Supp. 2d 956, 975 (E.D. Cal. 2008) (finding a $110 rate for legal assistants to be reasonable). This results in a total fee of $12,175.00 for hours worked by legal assistants.

### 4. Totaling Monetary Judgment Award Fees

After the reductions of the paralegal and legal assistant hours, the Court applies the rates proposed by Plaintiff for the attorney work performed.[2] The Court will then apply the 20% reduction for partial success. This results in the following calculation of fees accrued in connection with obtaining monetary judgment award:

| | |
|---|---:|
| Fees for Attorneys | $ 849,524.98 |
| Fees for Paralegals | $ 58,562.50 |
| Fees for Legal Assistants | + $ 12,175.00 |
| Total Before Reduction | $ 920,262.48 |
| 20% Partial Success Reduction | – $ 184.052.50 |
| Total After Reduction | $ 736,209.98 |

////

---

[2] As noted, this amount is less than the amount that could be sought as the cap is typically calculated based on the time it is sought. *Mitchell*, 2018 WL 3218364, at *6.

6

As this total amount ($736,209.98) exceeds Section 1997e(d)(2) cap of $712,500.00, the Court will instead only award $712,500.00 in attorney's fees accrued in connection with obtaining the monetary judgment award.

### 5. Portion of Judgment to Satisfy Attorney's Fees

The PLRA requires that the Court apply 25% of Plaintiff's judgment be applied to satisfy the awarded attorney's fees. *Murphy v. Smith*, 583 U.S. 220, 228 (2018). As such, 25% of Plaintiff's judgment shall go to pay the required award.

### 6. Non-Monetary Relief for Habeas Proceedings

Plaintiff seeks attorney's fees related to the successful re-opening of his habeas petition, arguing that this is "non-monetary relief" for which he is entitled attorney's fees. (Mot. at 11–13.) Plaintiff does not cite any authority that directly supports that such fees are warranted based on the reopening of another, separate case. Plaintiff argues that the habeas court relied on the Ninth Circuit's decision in this case in reopen the habeas proceedings and analogizes this to *Dannenberg v. Valadez*, 338 F.3d 1070 (9th Cir. 2003), where a prisoner plaintiff was entitled to fees for obtaining non-monetary relief after he successfully got a report expunged from his prison records. *Dannenberg* is meaningfully different from the present case as there, the records were expunged as the result of an injunction issued by the same district court in which the plaintiff subsequently sought attorney's fees. *Id.* at 1072. Here, while Plaintiff may have ultimately been successful in reopening the habeas action based in part on the Ninth Circuit's ruling, that was not a result expressly ordered by this court or the Ninth Circuit, nor was it relief granted by the same. Accordingly, Plaintiff's request for attorney's fees based on the re-opening of the habeas proceedings is denied.

### 7. Defense of Verdict

Plaintiff is entitled to attorney's fees for successfully defending the verdict against Defendant's post-judgment motions. The parties disagree, however, as to whether these fees are capped by Section 1997e(d).

1  Plaintiff argues that the Subsection (d)(2) cap (which caps damages relative to
2  the judgment amount) does not apply and cites *Dannenberg* and *Woods v. Carey*, 722
3  F.3d 1177 (9th Cir. 2013) for the proposition that such fees are separate from those
4  awarded as part of a monetary judgment within the meaning of Section 1997e(d)(2).
5  Plaintiff specifically quotes *Woods* as stating "[Section] (d)(2), applies to the limited
6  circumstance of attorney's fees awarded in conjunction with securing 'a monetary
7  judgment,' not to fees for services performed in the court of appeals." *Id.* at 1182.

8  Plaintiff's interpretation that this cap does not apply to fees accrued in
9  defending the verdict is correct. *Woods* clearly granted uncapped fees for defending
10 a verdict that was exclusively monetary. *Id.* Thus, Plaintiff's requested fees in defense
11 of the verdict are not subject to Section 1997e(d)(2)'s cap.

12 With that said, the rate cap under Subsection (d)(3) does still apply. In finding
13 that the Subsection (d)(2) cap did not apply, the *Woods* court relied closely on the
14 language of that subsection which specifically states that it applies "[w]henever a
15 monetary judgment is awarded . . . ." 42 U.S.C. § 1997e(d)(2); *see Woods*, 722 F.3d at
16 1181–82. By contrast, Subsection (d)(3) has no such limiting language. Plaintiff argues
17 that the Court should find that the Subsection (d)(3) should not apply as its language
18 makes it a limitation on fees awarded "in an action" and that the "action" in this case
19 ended when final judgment was entered.[3] (Reply (ECF No. 406) at 4–5.) Plaintiff does
20 not cite any authority in support of this idea and the Court is not persuaded that this
21 language is intended to uncap the rate for post-judgment damages.

22 Accordingly, the Court will apply the same CJA capped rate utilized above to
23 fees accrued defending the verdict, though it will not include it in the cap related to
24 the monetary judgment. The documentation provided by Plaintiff indicates 130.75
25 hours were accrued by attorneys, 2.75 by paralegals, and 1.25 by staff (again
26 ////
27

---

28 [3] At oral argument, Plaintiff's counsel seemed to concede that the rate cap still applied, but this issue was contested in the briefing.

8

considered to be legal assistants). The Court applies the present CJA rate for attorneys and the rates identified above for paralegals and legal assistants.

| | | | |
|---|---|---|---|
| Attorneys | 130.75 hours | $258/hour | $ 33,733.50 |
| Paralegals | 2.75 hours | $125/hour | $ 343.75 |
| Legal Assistants | 1.25 hours | $100/hour | $ 125.00 |
| Total | | | $ 34,202.25 |

As discussed, this $34,202.25 amount is not counted toward the cap for fees in obtaining a monetary judgment award under Section 1997e(d)(2).

### 8. Multiplier

In light of the above, the Court has granted fees for obtaining a monetary judgment at the capped amount of $712,500.00 and $34,202.25 for fees not capped by Section 1997e(d)(2). Plaintiff seeks a 2.0 multiplier fee enhancement of the attorney's fees.

As an initial matter, Defendant correctly notes that a multiplier cannot bring any attorney's fees subject to the Section 1997e(d)(2) over that cap amount. In *Kelly v. Wenger*, 822 F.3d 1085 (9th Cir. 2016), the Ninth Circuit examined whether fee enhancements were permitted by the PLRA. There the court found that the PLRA "limits the hours and the hourly rate used in calculating the lodestar figure" but did not "cap the total amount of attorney's fees awards *in cases seeking declaratory and injunctive relief* . . . ." *Id.* at 1101 (emphasis added). In doing so, it noted the difference between the express limitation on attorney's fee awards in Subsection (d)(2), concerning monetary judgment awards, and the lack of any such limitation in Subsection (d)(3). *Id.* *Parsons v. Ryan*, which Plaintiff cites as supporting that multipliers can be used to request attorney's fees exceeding the Subsection (d)(2) cap, relies on *Kelly* in stating that "[t]he PLRA . . . authorizes multipliers to the base hourly rate above the cap set by 42 U.S.C. § 1997e(d)(1)." 949 F.3d 443, 466 (9th Cir. 2020). Both *Kelly* and *Parsons* are consistent that multipliers can be applied to increase the

9

lodestar amount. Neither of these decisions supports neutralizing the hard cap on awards for obtaining monetary judgments imposed by 42 U.S.C. § 1997e(d)(2) by applying a multiplier.

In determining whether an enhancement is warranted, courts considered the *Kerr* factors which are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996). Other factors are considered subsumed within the lodestar calculation including: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained," *Id.* at 364 n.9 (citations omitted).

Plaintiff has not established that a multiplier is warranted in this instance. A fee enhancement is only applied when an applicant produces "'specific evidence' supporting the award" as being necessary to provide fair and reasonable compensation. *See Perdue v. Kenny*, 559 U.S. 542, 553 (2010). While Plaintiff's success at obtaining a jury verdict in his favor after having his complaint previously dismissed is impressive, the results obtained are subsumed within the lodestar calculation. *See Morales*, 96 F.3d at 364 n.9. Plaintiff argues that "without a multiplier, attorney's like those at Simpson Thacher would not be incentivized to represent community members who are most vulnerable like Penton, who make present as unsympathetic despite having meritorious claims." (Mot. at 16–17.) However, even without the multiplier, the fee award is substantial and Plaintiff has failed to present

////

specific evidence that shows that not applying a multiplier would disincentivize law firms from representing prisoners.[4]

Accordingly, Plaintiff's request for the application of a fee enhancement will be denied. Plaintiff will be awarded $712,500.00 in attorney's fees for obtaining a monetary judgment (with 25% of Plaintiff's judgment applied to that amount) and $34,202.25 in attorney's fees accrued defending that verdict.

### III.  Costs

Plaintiff is also entitled to reasonable costs besides attorney's fees. 42 U.S.C. § 1988(d). Plaintiff has requested a total of $238,120.69 in costs be taxed. (Mot. at 19.) Defendant objects to several items included within these costs.

Despite Plaintiff's arguments to the contrary, Plaintiff is not entitled to costs for expert fees. The Court's ability to award expert fees under 42 U.S.C. § 1988(c) does not extend to cases brought under 42 U.S.C. § 1983. *Doe v. Keala*, 361 F. Supp. 2d 1171, 1190–91 (D. Haw. 2005); *Ruff v. County of Kings*, 700 F. Supp. 2d 1225, 1243 (E.D. Cal. 2010). Thus, Plaintiff's request for $26,118.00 is "Expert Expenses" will not be granted.

Defendant raises other complaints about the costs billed but each of these is unpersuasive. Defendant "urges the court to reduce [trial presentation services] by half" on the grounds that the invoices do not provide sufficient detail and include duplicative work. (Opp'n at 10.) However, on review of the records submitted by the Plaintiff (ECF No. 401-9 at 32–39), the requested costs for trial presentation services appear well documented and non-duplicative. Defendant also argues that the lodging costs submitted "includes an extra five nights that were not required and not reasonable" but appears to not account for the last minute Ninth Circuit oral argument on Defendant's motion to stay trial proceedings pending the interlocutory appeal filed

---

[4] Though it does not weigh in the Court's determination, the Court notes that due to the limitation of 42 U.S.C. § 1997e(d)(2), it is not clear that the relatively small amount of extra fees awarded by a multiplier would actually serve the purpose of incentivizing representation for prisoners anyway.

11

by Defendant and the Final Status Conference the week before trial. The requested cost is thus reasonable.

Defendant also passingly mentions that "Plaintiff provides no authority for the proposition that Defendant must reimburse for the Plaintiff's travel." (Opp'n at 11.) Defendant provides no authority that such reimbursement would be improper but a review of relevant case law shows that such out-of-pocket costs are inappropriate when sought as costs but can be considered part of attorney's fees. *See Victory Processing, LLC v. Knudsen*, No. 17-cv-0027-H-CCL, 2021 WL 587905, at *7 (D. Mont. Feb. 16, 2021); *see also Banta v. City of Merrill*, No. 06-cv-3003-CL, 2007 WL 3543445, at *5 n.2 (D. Or. Nov. 14, 2007). However, as the Plaintiff's attorney's fees are already capped for fees incurred in obtaining the monetary judgment, the Court will simply deduct $494.74 in flight costs for Plaintiff and $1,503.89 in hotel costs for Plaintiff from the requested costs.

Finally, Defendant objects that the $59,211.34 Plaintiff requests for fees accrued for legal research. While these fees appear to have reasonable records associated with them (ECF No. 401-9 81–84), they appear to well exceed what is normally requested in other cases. *See e.g.*, *Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1068 (C.D. Cal. 2014) (approving $2,485.76 in recoverable costs for parking fees, messenger fees, copying charges, transcript fees, shipping costs and Westlaw legal research costs); *Zeigler v. County of San Luis Obispo*, No. 17-cv-9295-MWF-AFMx, 2023 WL 3432238, at *18 (C.D. Cal. Mar. 1, 2023) (awarding $429.50 in legal research costs); *Smith Roofing and Siding, L.L.C. v. Smith*, 2024 WL 1308983, at *11 (D. Idaho Mar. 26, 2024) (approving costs of $622.00 "for fees related to filing, service, and legal research[]"). Accordingly, the Court will reduce these costs to $10,000.00.

Given, the above, the Court approves $160,792.72 in taxed costs.

////

////

////

**IV.    Conclusion**

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's Supplemental Motion for Attorney's Fees (ECF No. 401) is GRANTED IN PART and DENIED IN PART, as described above;
2. Plaintiff's Motion for Attorney's Fees (ECF No. 378) is DENIED AS MOOT; and
3. Plaintiff is awarded $712,500.00 in attorney's fees for obtaining a monetary judgment (with 25% of Plaintiff's judgment to be applied to those fees), $34,202.25 attorney's fees for defending the judgment, and $160,792.72 in costs.

IT IS SO ORDERED.

Dated:    **November 12, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

penton11cv00518.attorneys_fees